1
2
3
4
5
6

**Todd M. Friedman (216752)**
**Adrian R. Bacon (280332)**
**Law Offices of Todd M. Friedman, P.C.**
**21550 Oxnard Street, suite 780**
**Woodland Hills, CA 91367**
**Phone: 877-619-8966**
**Fax: 866-633-0228**
**tfriedman@toddflaw.com**
**abacon@toddflaw.com**
**Attorneys for Plaintiff**

7   *Attorneys for Plaintiff, RICHARD WINTERS, and all others similarly situated*

8

9   IN THE UNITED STATES DISTRICT COURT

    FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  RICHARD WINTERS, individually, and on        Case No. **'20 CV 0468 BAS BGS**
    behalf of other members of the general
12  public similarly situated,
                                                 **CLASS ACTION COMPLAINT**
13                  Plaintiff,
                                                 (1)   Violation of Unfair Competition Law
14          vs.                                        (Cal. Business & Professions Code
                                                       §§ 17500 *et seq.*) and
15  TWO TOWNS CIDERHOUSE INC.,                    (2)   Violation of Unfair Competition Law
                                                       (Cal. Business & Professions Code
16                  Defendant.                          §§ 17200 *et seq.*)

17

18                                               **Jury Trial Demanded**

19

20

21

22

23

24

25

26

27

28

Plaintiff RICHARD WINTERS ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, allege as follows:

## PRELIMINARY STATEMENTS

1.      This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of Unfair Competition Law (Cal. Business & Professions Code §§ 17500 *et seq*., and the Unfair Competition Law (Cal. Business & Professions Code  §§ 17200 *et seq.*), resulting from the illegal actions of Defendant, in intentionally labeling its drink products with false and misleading claims that they contain no artificial flavors, when Defendant's products contain artificial Malic Acid. Malic Acid is a common food additive associated with tart and sour flavors. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to 28 U.S.C. §1332(d), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest or costs and is a class action in which the members of the class are citizens of a State different from the Defendant.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this District, and Defendant does business, <u>inter alia</u>, in the Southern District of California.

## PARTIES

4.      Plaintiff is an individual who was at all relevant times residing in Mesa, Arizona.

5.      On information and belief, Defendant is an Oregon corporation whose principal place of business is located in Corvallis, Oregon.

6.      At all times relevant hereto, Defendant was engaged in the manufacturing, marketing, and sale of cider products.

## FACTS COMMON TO ALL COUNTS

7.      Defendant manufactures, advertises, markets, sells, and distributes apple cider products throughout California and the United States under the brand name 2 Towns Cider.

8.      During the Class Period the following list of products (the "Products") were advertised as containing no artificial flavors when they in fact contained artificial Malic Acid:

> a.      Bright Cider;
>
> b.      Easy Squeezy;
>
> c.      Pacific Pineapple;
>
> d.      Made Marion;
>
> e.      Ginja Ninja;
>
> f.      Outcider;

9.      During the Class Period Plaintiff purchased many of the Products.

10.     Plaintiff's most recent purchase was on November 18, 2019.

11.     All of the Products contain artificial DL-Malic Acid; therefore, the apple flavors of Defendant's products are at least partially artificial, but Defendant intentionally advertises and labels the Products as containing "Nothing Artificial: NO concentrates or refined sugars; NO essences or artificial flavors; NO velcorin or sorbate."

12.     Persons, like Plaintiff herein, have an interest in purchasing products that do not contain false and misleading claims with regards to the inclusion of artificial ingredients in those products.

13.     By making false and misleading claims about the ingredients contained in their products Defendant impaired Plaintiff's ability to choose the type and quality of products he chose to buy.

14.     Therefore, Plaintiff has been deprived of his legally-protected interest to obtain true and accurate information about his consumer products as required by California and Federal law.

15.     As a result Plaintiff has been misled into purchasing products he would not have otherwise purchased.

16.     A flavor is a substance the function of which is to impart taste. See 21 C.F.R. § 101.22(a)(1),(a)(3).

17.     Taste is the combination of sensations arising from specialized receptor cells located in the mouth. Gary Reineccius, Flavor Chemistry and Technology 2nd edition, § 1.2 (2005). Taste can be defined as sensations of sweet, sour, salty, bitter, and umami; however, limiting taste to five categories suggests that taste is simple, which is not true. *Id.* For example, the taste of sour contains the sourness of vinegar (Acetic Acid), sour milk (Lactic Acid), lemons (Citric Acid), apples (Malic Acid), and wines (Tartaric Acid). *Id.* Each of those acids is responsible for unique sensory characteristics of sourness. *Id.*

18.     Fruit flavors are the sum of the interaction between sugars, acids, lipids, and a blend of volatile compounds. Hui, et. al., Handbook of Fruit and Vegetable Flavors, Ch. 36 p. 693 (2010). The content of sugars, mainly glucose and fructose, and its ratio to the content of acids, such as citric and malic acid, determine the sweetness of fruits. *Id.*

19.     Malic Acid ($C_4H_6O_5$) is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid. Malic Acid has two isomers, or different arrangements of atoms in the molecule, L-Malic Acid, and D-Malic Acid. 21 C.F.R. § 184.1069. L-Malic Acid *occurs naturally* in various fruits. *Id* (Emphasis added). D-Malic Acid *does not occur naturally*. *Id* (emphasis added). D-Malic Acid is most commonly found in a Racemic Mixture, DL-Malic Acid, which is commercially made from petroleum products.

20.     An isomer is a molecule sharing the same atomic make up as another but differing in structural arrangements. Dan Chong and Johnathan Mooney, *Chirality and Stereoisomers*, (2019).[1] Stereoisomers contain different types of isomers each with distinct characteristics that separate each other as different chemical entities with different chemical properties. *Id.* Stereoisomers differ from each other by spatial arrangement, meaning different atomic particles and molecules are situated differently in any three-dimensional direction by even one degree. *Id.* Enantiomers are a type of stereoisomer that are mirror-images and cannot be superimposed. *Id.*  It can be helpful to think of enantiomers as right-hand and left-hand versions of the same molecular formula. D-Malic Acid and L-Malic Acid are enantiomers.

21.     The following are skeletal formulas of the enantiomers D-Malic Acid and L-Malic Acid:

---

[1] https://chem.libretexts.org/Bookshelves/Organic_Chemistry/Supplemental_Modules_(Organic_Chemistry)/Chirality/Chirality_and_Stereoisomers.



22.     Sweetness and tartness are important contributors to the states and flavor perception of fruit juices. Hui, et. al., Handbook of Fruit and Vegetable Flavors, Ch. 24 p. 455 (2010). Organic acids such as Malic Acid in apples and pears, and Tartaric and Malic Acid in grapes, contribute to the tartness of the juices. *Id.* The **sugar to acid ratio** have a **great impact** on the perceived sweetness and tartness of fruit juices, as well as the flavor perception and balance, and overall consumer acceptability. *Id* (emphasis added).

23.     Malic Acid is a key organic acid in the flavors of many fruits as is evidence by its high concentration in those fruits. The following are charts depicting the concentration of Malic Acid in the characterizing fruit flavors of Defendant's products:

---

[2] The only structural difference between D-Malic Acid and L-Malic Acid is that one Hydroxide ($OH^-$) is attached to each different enantiomer at a different angle. The solid cone and the dashed-line cone represent the stereochemical differences. Straight lines represent bonds on the same plane as the paper, solid cones represent bonds pointed towards the observer, and dashed-line cones represent bonds pointed away from the observer.

**Table 8.7.** Concentrations of malic acid (MA; mg g⁻¹ FW) in the flesh of some ripe temperate fruits and some leaves and roots. For leaves and roots, nitrate and ammonium refer to the form of nitrogen on which the plants were grown.

| Fruits | MA level | Reference |
|---|---|---|
| Apple | 4.8–14.7 | Fuleki *et al.* 1994 |
| Blackberry | 0.5–6.0 | Wrolstad *et al.* 1980 |
| Blueberry (highbush) | 0.47–0.50 | Markakis *et al.* 1963 |
| Blueberry (lowbush) | 5.0 | Kalt and McDonald 1996 |
| Cherry (sweet) | 5.0–8.5 | Girard and Kopp 1998 |
| Cherry (sweet) | 8.5–10 | Kelebek and Selli 2011 |
| Cherry (sweet) | 6.3–14 | Ballistreri *et al.* 2013 |
| Citrus (orange) | 0.6–2.0 | Ting and Attaway 1971 |
| Citrus (tangerine) | 1.8–2.1 | Ting and Attaway 1971 |
| Citrus (grapefruit) | 0.4–0.6 | Ting and Attaway 1971 |
| Citrus (lemon) | 1.7–2.6 | Ting and Attaway 1971 |
| Citrus (lime) | 2.0 | Ting and Attaway 1971 |
| Currant (black) | 0.7–1.7 | Rodriguez *et al.* 1992 |
| Currant (red) | 0.5–2.1 | Rodriguez *et al.* 1992 |
| Currant (red) | 0.3–0.5 | Nour *et al.* 2011 |
| Currant (white) | 0.4 | Rodriguez *et al.* 1992 |
| Peach | 8.0 | Byrne *et al.* 1991 |
| Peach | 2.0–7.0 | Dirlewanger *et al.* 1999 |
| Pear | 1.6–2.0 | Drake and Eisele 1999 |
| Plum (damson) | 7.0 | García-Mariño *et al.* 2008 |
| Plum (European) | 20.0 | Lombardi-Boccia *et al.* 2004 |
| Plum (Japanese) | 7.6–15.9 | Robertson *et al.* 1992 |
| Plum (Japanese) | 8.0–10.0 | Singh *et al.* 2009 |
| Raspberry | 0.14–1.7 | Rodriguez *et al.* 1992 |
| Strawberry | 1.5–2.8 | Moing *et al.* 2001 |
| **Leaves** | | |
| Tobacco (nitrate) | 11.0 | Pucher and Vickery 1949 |
| Tobacco (ammonium) | 0.8 | Pucher and Vickery 1949 |
| Barley (nitrate) | 4.3 | Kandlbinder *et al.* 1997 |
| Barley (ammonium) | 0.3 | Kandlbinder *et al.* 1997 |
| **Roots** | | |
| Barley (nitrate) | <0.13 | Kandlbinder *et al.* 1997 |
| Barley (ammonium) | <0.13 | Kandlbinder *et al.* 1997 |

[3]

---

[3] Robert Walker and Franco Famiani, *Horticultural Reviews, Organic Acids in Fruits*, (Vol. 45, Ch. 8 2018).

Table I. Acids Naturally Present in Fruits

| Fruit | Predominant Acid | Secondary Acids |
|---|---|---|
| Apple | Malic Acid (95%*) | Tartaric Acid, Fumaric Acid |
| Apricot | Malic Acid (70%*) | Citric Acid, Tartaric Acid |
| Cherry | Malic Acid (94%*) | Tartaric Acid |
| Grape | Malic Acid (60%*) | Tartaric Acid |
| Grapefruit | Citric Acid | Malic Acid |
| Guava | Citric Acid | Malic Acid |
| Lime, Lemon | Citric Acid | Malic Acid |
| Mango | Citric Acid | Malic Acid, Tartaric Acid |
| Orange | Citric Acid | Malic Acid |
| Peach | Malic Acid (73%*) | Citric Acid |
| Pear | Malic Acid (77%*) | Citric Acid |
| Pineapple | Citric Acid | Malic Acid |
| Raspberry | Citric Acid | Malic Acid, Tartaric Acid |
| Strawberry | Citric Acid | Malic Acid, Tartaric Acid |
| Tamarind | Tartaric Acid | Citric Acid, Malic Acid |
| Watermelon | Malic Acid (99%*) | Fumaric Acid |

*% of the total acid in the fruit

For more information: Bartek Ingredients Inc.  •  421 Seaman St.  •  Stoney Creek, Ontario  L8E 3J4  •  Canada
Tel: (905) 662-3292  •  (905) 662-1127  •  Order desk: 1-800-263-4165  •  Fax: (905) 662-8849
www.bartek.on.ca  •  sales@bartek.on.ca

4

24.     Adding DL-Malic Acid to a fruit juice solution containing L-Malic Acid would change the concentration of Malic Acid in the solution and the ratio of total Malic Acid to sugars in that solution.

25.     Natural sugars—like glucose, fructose, and sucrose—combined with artificial DL-Malic Acid in a ratio engineered to resemble the natural chemical combination of sugar and L-Malic Acid found in the characterizing fruits of Defendant's products does not equal the natural flavor of those characterizing fruits. Likewise, a natural chemical combination of sugar and L-

---

[4] Daniel Sortwell and Anne Woo, *Improving the Flavor of Fruit Products with Acidulants*, p. 1 (1996), http://citeseerx.ist.psu.edu/viewdoc/download?doi=10.1.1.548.4424&rep=rep1&type=pdf

CLASS ACTION COMPLAINT

Malic Acid altered by adding artificial DL-Malic Acid is no longer the original chemical combination of sugar and L-Malic Acid and therefore no longer the natural flavor.

26.     Irrespective of the purpose Defendant claims DL-Malic Acid was added to its products, DL-Malic Acid has the same effect on the fruit flavors. Defendant does not have the ability to command DL-Malic Acid to only perform certain functions, and Defendant should not be allowed to decide which Malic Acid constitutes flavor and which Malic Acid constitutes only a flavor enhancer or Ph balancer.

27.     Defendant includes DL-Malic Acid to help make its products taste more like apple.

28.     Defendant had the option to add naturally extracted L-Malic Acid to its products, or to add a naturally manufactured acid such as Citric Acid to its products, but it instead intentionally used artificial DL-Malic Acid because it was likely cheaper.

29.     Wine and Cider beverages containing less than 7% alcohol by volume are subject to the labeling requirements of the Federal Food, Drug, and Cosmetic Act ("FFDCA"), labeling requirements. CPG Sec. 510.450.

30.     The Sherman Food, Drug, and Cosmetic Act ("SFDCA") incorporates all food additive regulations of the Federal Food, Drug, and Cosmetic Act. Cal. Health & Safety Code § 110100.

31.     Under the Federal Food, Drug, and Cosmetic Act ("FFDCA"), artificial flavor is defined as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R § 101.22(a)(1).

32.     DL-Malic Acid is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof.

33.     A combination of sugar and DL-Malic Acid in a ratio resembling a fruit flavor cannot be derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof.

34.     Likewise, a combination of sugar, natural L-Malic Acid, and artificial DL-Malic Acid combined in a way to resemble the natural ratio of sugar and L-Malic Acid found in the characterizing fruits of Defendant's products cannot be derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof.

35.     A combination of sugars and artificial DL-Malic Acid engineered to resemble the natural ratio of sugars and natural L-Malic Acid that make up the natural flavor of the characterizing fruit of Defendants' products is not a natural flavor. Put more simply, the natural flavor of the fruits in controversy is heavily dependent on a specific ratio of sugar and L-Malic Acid, while Defendants flavors depend upon a ratio of sugar and DL-Malic Acid.

36.     Under the FFDCA, a flavor enhancer is a substance "added to supplement, enhance, or modify the original taste and or aroma of a food without imparting a characteristic taste or aroma of its own." 21 C.F.R. § 170.3(o)(11).

37.     Under the FFDCA, PH balancers are "substances added to change or maintain active acidity or basicity, including buffers, acids, alkalis, and neutralizing agents." 21 C.F.R. § 170.3(o)(23).

38.     DL-Malic Acid under other circumstances could function as a flavor enhancer or PH balancer, such as when Malic Acid is not a core component of the natural flavor of the food. For example, Malic Acid added to vinegar (Ascetic Acid) dishes like barbecue pork, coleslaw, or pickled eggs would most likely not fundamentally alter the underlying vinegar flavors.

39.     Under the circumstances in this case, artificial DL-Malic Acid fundamentally alters the original combination of sugar and natural L-Malic Acid core to apple flavors, so that the flavor of the Products are no longer a natural combination of sugar and L-Malic Acid but instead are an artificial combination of sugar and DL-Malic Acid.

40.     Under the FFDCA, a primary flavor identified on the front of a food product label is referred to as a "characterizing flavor." 21 C.F.R. § 101.22.

41.     The FFDCA further defines a "characterizing flavor" as flavors identified by "… labeling, or advertising of a food [making] any direct or indirect representations with respect to the primary recognizable flavor, by word, vignette, e.g., depiction of a fruit or other means." 21 C.F.R. § 101.22(i).

42.     If the food products contain any artificial flavor that simulates, resembles or reinforces the characterizing flavor, the name of the characterizing flavor "shall be accompanied by the word(s) 'artificial' or 'artificially flavored'… e.g., 'artificial vanilla', 'artificially flavored strawberry', or 'grape artificially flavored.' 21 C.F.R. § 101.22(i)(2).

43.     Under the SFDCA, a food is misbranded if its labeling is false or misleading in any particular, including if it contains any artificial flavoring, coloring, or chemical preservative, unless it bears labeling stating that fact. Cal. Health & Safety Code § 110660; Cal. Health & Safety Code § 110740.

44.    The following are examples of the Products' labeling that explicitly violate FFDCA and SFDCA regulations:

 

45.    The Products' apple flavors containing DL-Malic Acid resemble the natural characterizing apple flavors Defendant claims are in its products.

46.    Plaintiff purchased Defendant's products because Defendant's packaging claims that their products do not contain artificial flavors.

47.    Plaintiff would not have been able to understand that the Products contained artificial flavoring without an advanced understanding of organic chemistry and without performing chemical analysis on the Products.

48.    Furthermore, due to Defendant's intentional, deceitful practice of falsely labeling the Products as containing no artificial flavors, Plaintiff could not have known that the Products contained artificial flavors.

49.    Plaintiff was unaware that the Products contained artificial DL-Malic Acid when he purchased them.

50.     Plaintiff and the Class were deceived into paying money for products they did not want because the Products were labeled as containing "Nothing Artificial: NO concentrates or refined sugars; NO essences or artificial flavors; NO velcorin or sorbate."

51.     Worse than the lost money, Plaintiff, the Class, and Sub-Class were deprived of their protected interest to choose the foods and ingredients they ingest.

52.     Plaintiff, the Class, and Sub-Class members, are not, and should not be, required to chemically test the food products they purchase to know the true contents of those products.

53.     Defendant, and not Plaintiff, the Class, or Sub-Class, knew or should have known that the Products' express labeling stating "no artificial flavors" was false, deceptive, and misleading, and that Plaintiff, the Class, and Sub-Class members would not be able to tell the Products' contained artificial DL-Malic Acid unless Defendant expressly told them, as required by law.

54.     Defendant employs professional chemists or brewers to create the chemical flavor formulas of Defendant's products. Therefore, Defendant through its employees knew or should have known that DL-Malic Acid is not naturally occurring, and that by adding DL-Malic Acid to its products the natural flavoring, if any was ever actually added to the products, would be fundamentally changed.

55.     Defendant intentionally labeled its products as containing "Nothing Artificial:  NO concentrates or refined sugars; NO essences or artificial flavors; NO velcorin or sorbate" to capitalize on consumers growing interest in high quality products. Defendant also advertises on its website that its products do not contain "Artificial 'apple' and other flavorings, sugar and Carmel color added to attempt to restore the look & flavor of a hard cider."[5]

---

[5] https://2townsciderhouse.com/ourmission/quality/

56.    On information and belief, Defendant through its employees did know that DL-Malic Acid was not naturally occurring and would fundamentally alter any natural combination of sugar and L-Malic Acid in its products, but chose to include DL-Malic Acid because it was cheaper for Defendant than using natural L-Malic Acid and because it did not believe its customers were well educated enough to know the difference.

57.    As a result of Defendant's acts and omissions outlined above, Plaintiff has suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

    a.    Lost money;

    b.    Wasting Plaintiff's time; and

    c.    Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling.

## CLASS ALLEGATIONS

58.    Plaintiff brings this action on behalf of himself and all others similarly situated, as a member of the proposed class (the "Class"), defined as follows:

All persons within the United States who purchased the Products within four years prior to the filing of this Complaint.

59.    Plaintiff also brings this action on behalf of himself and all others similarly situated, as a member of the proposed sub-class (the "Sub-Class"), defined as follows:

All persons who purchased the Products within California within four years prior to the filing of this Complaint.

60.    Defendants, their employees and agents are excluded from the Class and Sub-Class. Plaintiff does not know the number of members in the Class and Sub-Class, but believes the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

61.     The Class and Sub-Class are so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of their members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Class and Sub-Class include thousands, if not millions of members. Plaintiff alleges that the class members may be ascertained by the records maintained by Defendant.

62.     This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Class and Sub-Class are so numerous that joinder of their members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

63.     There are questions of law and fact common to the Class affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual class members and include, but are not necessarily limited to, the following:

   a. Whether the Defendant intentionally, negligently, or recklessly disseminated false and misleading information by including the statement "Nothing Artificial: NO concentrates or refined sugars; NO essences or artificial flavors; NO velcorin or sorbate" on the Products' packaging;

   b. Whether the Class and Sub-Class members were informed of the artificial nature of the ingredients in the Products;

   c. Whether the Products contain artificial flavoring;

   d. Whether Defendant's conduct was unfair and deceptive;

   e. Whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above;

f.      Whether the statement "Nothing Artificial: NO concentrates or refined sugars; NO essences or artificial flavors; NO velcorin or sorbate" is misleading or false;

g.      Whether there should be a tolling of the statute of limitations; and

h.      Whether the Class and Sub-Class are entitled to restitution, actual damages, punitive damages, and attorney fees and costs.

64.     As a resident of the United States and the State of California who purchased the Products, Plaintiff is asserting claims that are typical of the Class and Sub-Class.

65.     Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Class and Sub-Class.

66.     Plaintiff will fairly and adequately protect the interests of the members of the Class and Sub-Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

67.     A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class and Sub-Class members is impracticable. Even if every Class and Sub-Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each class member. Class treatment will also permit the adjudication of relatively

small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

68.     The prosecution of separate actions by individual members of the Class and Sub-Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests.

69.     Plaintiff's claims and injuries are identical to the claims and injuries of all class and sub-class members, because all claims and injuries of all class and sub-class members are based on the same false labeling, same addition of DL-Malic Acid to apple flavored products, and same legal theory. All allegations arise from the identical, false, affirmative written statements made by Defendants when they claimed the Products contained "Nothing Artificial: NO concentrates or refined sugars; NO essences or artificial flavors; NO velcorin or sorbate," when in reality the Products contained a combination of sugars and  artificial DL-Malic Acid engineered to resemble the natural ratio of sugars and natural L-Malic Acid of the apple flavors in controversy.

70.     Defendants have acted or refused to act in respect generally applicable to the Class and Sub-Class thereby making appropriate final and injunctive relief with regard to the members of the Class and Sub-Class as a whole.

71.     The size and definition of the Class and Sub-Class can be identified through records held by retailers carrying and reselling the Products, and by Defendant's own records.

## FIRST CAUSE OF ACTION
### Violation of the California False Advertising Act
### (Cal. Bus. & Prof. Code §§ 17500 *et seq.*)

72.     Plaintiff incorporates by reference each allegation set forth above.

73.     Pursuant to California Business and Professions Code section 17500, *et seq*., it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...or...to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

74.     California Business and Professions Code section 17500, *et seq.*'s prohibition against false advertising extends to the use of false or misleading written statements.

75.     Defendant misled consumers by making misrepresentations and untrue statements about the Class Products, namely, Defendant sold the Products advertised to have "Nothing Artificial: NO concentrates or refined sugars; NO essences or artificial flavors; NO velcorin or sorbate" fully knowing the Products contained D-Malic Acid, and made false representations to Plaintiff and other putative class members in order to solicit these transactions.

76.     Specifically, Defendant wrote on the packages of these Products that they contained "Nothing Artificial: NO concentrates or refined sugars; NO essences or artificial flavors; NO velcorin or sorbate."

77.     Defendant knew that their representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiff and other Class Members.

78.     As a direct and proximate result of Defendant's misleading and false advertising, Plaintiff and the other Class Members have suffered injury in fact and have lost money or property.  Plaintiff reasonably relied upon Defendant's representations regarding the Products, namely that they contained "No Artificial Flavors".  In reasonable reliance on Defendant's false advertisements, Plaintiff and other Class Members purchased the Products.  In turn Plaintiff and other Class Members ended up with cider products that turned out to actually be different than advertised, and therefore Plaintiff and other Class Members have suffered injury in fact.

79.   Plaintiff alleges that these false and misleading written representations made by Defendant constitute a "scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

80.   Defendant advertised to Plaintiff and other putative class members, through written representations and omissions made by Defendant and its employees, that the Class Products would contain "Nothing Artificial: NO concentrates or refined sugars; NO essences or artificial flavors; NO velcorin or sorbate."

81.   Defendant knew that the Class Products did in fact contain D-Malic Acid.

82.   Thus, Defendant knowingly sold Class Products to Plaintiff and other putative class members that contained artificial flavors contrary to the Products packaging.

83.   The misleading and false advertising described herein presents a continuing threat to Plaintiff and the Class Members in that Defendant persists and continues to engage in these practices and will not cease doing so unless and until forced to do so by this Court.  Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendant to cease their false advertising, as well as disgorgement and restitution to Plaintiff and all Class Members Defendant's revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

**SECOND CAUSE OF ACTION**
**Violation of Unfair Business Practices Act**
**(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

84.   Plaintiff incorporates by reference each allegation set forth above.

85.   Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL.  Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices.  A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause

substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm. Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

## UNFAIR

86.     California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice." Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

87.     In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

88.     Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class. Plaintiff and members of the Class have suffered injury in fact due to Defendant's decision to sell them misbranded cider products (Class Products). Thus, Defendant's conduct has caused substantial injury to Plaintiff and the members of the Sub-Class.

89.     Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer. Such deception utilized by Defendant convinced Plaintiff and members of the Class that the Class Products contained "No Artificial Flavors", in order to induce them to spend money on said Class Products. In fact, knowing that Class Products, by their objective terms contained artificial flavors, unfairly profited from their

sale, in that Defendant knew that the expected benefit that Plaintiff would receive from this feature is nonexistent, when this is typically never the case in situations involving flavors said to be contained with a product.  Thus, the injury suffered by Plaintiff and the members of the Sub-Class is not outweighed by any countervailing benefits to consumers.

90.     Finally, the injury suffered by Plaintiff and members of the Class and Sub-Class is not an injury that these consumers could reasonably have avoided.  After Defendant, falsely represented that Class Products would contain "No Artificial Flavors", the Plaintiff, Class members, and Sub-Class Members suffered injury in fact due to Defendant's sale of Class Products to them.  Defendant failed to take reasonable steps to inform Plaintiff and class members that the Class Products contained artificial flavors, including intentionally misbranding the Products by labeling them as containing "Nothing Artificial: NO concentrates or refined sugars; NO essences or artificial flavors; NO velcorin or sorbate."   As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiff and the Class members to purchase drink products containing artificial flavors. Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these consumers could reasonably have avoided.

91.     . Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

**FRAUDULENT**

92.     California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice."  In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

93.     The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived.  Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent

practice, or sustained any damage.

94.     Here, not only were Plaintiff and the Class members likely to be deceived, but these consumers were actually deceived by Defendant.  Such deception is evidenced by the fact that Plaintiff agreed to purchase Class Products under the basic assumption that they contained "No Artificial Flavors" even though the Products contained DL-Malic Acid.  Plaintiff's reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

95.     As explained above, Defendant deceived Plaintiff and other Class Members by representing the Class Products as containing "No Artificial Flavors" when the Products contained DL-Malic Acid.

96.     Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

## UNLAWFUL

97.     California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

98.     As explained above, Defendant deceived Plaintiff and other Class Members by representing the Class Products as containing "Nothing Artificial: NO concentrates or refined sugars; NO essences or artificial flavors; NO velcorin or sorbate" when the Products contained DL-Malic Acid.

99.     Defendant used false advertising, marketing, and misrepresentations to induce Plaintiff and Class Members to purchase the Class Products, in violation of California Business and Professions Code Section 17500, et seq.  Had Defendant not falsely advertised, marketed or misrepresented the Class Products, Plaintiff and Class Members would not have purchased the Class Products. Defendant's conduct therefore caused and continues to cause economic harm to Plaintiff and Class Members.

100.    These representations by Defendant are therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 *et seq*.

101.    Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief.   Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and Class Members seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

## MISCELLANEOUS

102.    Plaintiff and Class Members allege that they have fully complied with all contractual and other legal obligations and fully complied with all conditions precedent to bringing this action or all such obligations or conditions are excused.

## REQUEST FOR JURY TRIAL

103.    Plaintiff requests a trial by jury as to all claims so triable.

## PRAYER FOR RELIEF

104.    Plaintiff, on behalf of herself and the Class, requests the following relief:

(a)    An order certifying the Class and appointing Plaintiff as Representative of the Class;

(a)    An order certifying the undersigned counsel as Class Counsel;

(b)    An order requiring TWO TOWNS CIDER HOUSE, INC., at its own cost, to notify all Class Members of the unlawful and deceptive conduct herein;

(c)    An order requiring TWO TOWNS CIDER HOUSE, INC., to engage in corrective advertising regarding the conduct discussed above;

(d)    Full restitution of all funds acquired from Plaintiff and Class Members from the sale of misbranded Class Products during the relevant class period;

(e)    Punitive damages, as allowable, in an amount determined by the Court or jury;

(f)    Any and all statutory enhanced damages;

(g)    All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

(h)    Pre- and post-judgment interest; and

(i)    All other relief, general or special, legal and equitable, to which Plaintiff and Class Members may be justly entitled as deemed by the Court.

Dated:  March 12, 2020         Respectfully submitted,

LAW OFFICES OF TODD M. FRIEDMAN , PC

By: /s Todd. M. Friedman
TODD M. FRIEDMAN, ESQ.

Attorney for Plaintiff Richard Winters