Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
***Attorneys for Plaintiffs***

## THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

RICHARD WINTERS and JAKE
GRUBER, individually on behalf of
herself and all others similarly
situated,

    Plaintiffs,

    vs.

TWO TOWNS CIDERHOUSE INC.,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 20-cv-0468-BAS-BGS

**PLAINTIFFS' NOTICE OF
MOTION & MOTION FOR
PRELIMINARY APPROVAL OF
CLASS SETTLEMENT AND
PROVISIONAL
CERTIFICATION OF
SETTLEMENT CLASS**

Date:    August 31, 2020
Time:    9:00 A.M.
Courtroom:  4B
Hon. Judge Cynthia A. Bashant

**TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR
ATTORNEYS OF RECORD:**

    **PLEASE TAKE NOTICE** that on August 31, 2020, at 9:00 a.m. in
Department 4B of the United States District Court for the Southern District of
California, located at 333 W Broadway #420, San Diego, CA 92101, Plaintiffs
Richard Winters and Jake Gruber ("Plaintiffs"), for themselves and other similarly
situated, will move this Court for an order granting preliminary approval of the class

action settlement and certification of the settlement class as detailed in Plaintiffs' memorandum of points and authorities.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the declaration and exhibits thereto, the Complaint, all other pleadings and papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

Dated:  July 28, 2020                    Respectfully submitted,

By:
*/s/ Todd M. Friedman*
_____

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C**.

***Attorneys for Plaintiffs and all other similarly situated.***

## CERTIFICATION OF COMPLIANCE WITH STANDING ORDER

Plaintiffs' counsel certifies that prior to filing the instant motion, the parties, through counsel, met and conferred pertaining to the subject matter of the instant motion.  Defendant does not oppose this motion.

Dated:  July 28, 2020                    Respectfully submitted,


By:  */s/ Todd M. Friedman*
_____

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C**.

***Attorneys for Plaintiffs and all others similarly situated.***

# TABLE OF CONTENTS

I. INTRODUCTION.................................................................1

II. STATEMENT OF FACTS ......................................................3

   A. Factual Background ..................................................3

   B. Proceedings to Date ................................................4

   C. Statement of Facts...................................................5

     1. The Settlement Class .........................................5

       a. The Settlement Class .................................5

       b. Class Membership Determination...............5

     2. Settlement Payment............................................6

     3. Monetary Benefit to Class Members and Class Notice ..............7

     4. Scope of Release ...............................................8

     5. Opportunity to Opt Out and Object.......................8

     6. Payment of Notice and Administrative Costs ...........9

     7. Class Representative's Application for Incentive Award ...........9

     8. Class Counsel's Application for Attorneys' Fees, Costs and Expenses ...........9

     9. Cy Pres Distribution..........................................10

III. ARGUMENT...................................................................10

   A. The Legal Standards for Preliminary Approval of a Class Action Settlement.........................................10

   B. Liability is Highly Contested and Both Sides Face Significant Challenges in Litigating this Case ...............13

   C. Defendant's Agreement to Finance the Common Benefit Fund Provides a Fair and Substantial Benefit to the Class ..............15

   D. The Settlement was Reached as the Result of Arms-Length

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

i

Negotiation, Without Collusion, with the Assistance of the
Mediator .................................................................................15

E. **The Settlement Experienced Counsel Have Determined that the
Settlement is Appropriate and Fair to the Class** .......................16

F. **The Court Should Preliminarily Certify the Class for Purposes of
Settlement** .............................................................................16

G. **The Proposed Class is Numerous.** .............................................16

H. **The Commonality Requirement is Satisfied, Because Common
Questions of Law and Fact Exist.** ..............................................17

I. **The Typicality Requirement is Met.** ..........................................18

J. **The Adequacy Requirement is Satisfied.** ....................................18

K. **Common Questions Predominate, Sufficient to Certify a Class for
Settlement Purposes Only.** .......................................................19

L. **Class Treatment for Settlement Purposes is Superior to Individual
Resolutions.** ...........................................................................19

M. **The Proposed Class Notice is Consistent with Ninth Circuit
Requirements and Provides Adequate Notice for Claims,
Objections and Opt Outs.** .........................................................21

N. **The Court Should Preliminarily Certify the Class for Purposes of
Settlement.** ............................................................................23

O. **The Court Should Appoint Epiq Systems, Inc. as the Settlement
Administrator** .........................................................................24

P. **Final Approval Hearing Should be Scheduled** ...............................24

IV. CONCLUSION ...................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## **Table of Authorities**

2

**Cases**

3

*Amchem Prods. Inc. v. Woodward*, 521 U.S. 591 (1997)........................................20

4

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)............................12

5

*Elkins v. Equitable Life Ins. of Iowa*, 1998 WL 133741 (M.D. Fla. Jan. 27, 1998)20

6

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) .................... passim

7

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir.

8

   1964)................................................................................................................17

9

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y.

10

   1995).................................................................................................................11

11

*Kirkorian v. Borelli*, 695 F.Supp. 446 (N.D. Cal.1988) ........................................12

12

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978).................24

13

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)................13

14

Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,

15

   244 F.3d 1152 (9th Cir. 2001) ....................................................................19, 20

16

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)...................21

17

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982) ....11, 12

18

*Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F.

19

   Supp. 364, 372 (E.D. Pa. 1970) .............................................................................12

20

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994).....................................................21

21

*Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688 (M.D. Fla. 2005) .............20

22

*Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370 (9th Cir. 1993).......................23

23

*Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir.

24

   1989)................................................................................................................11

25

*Valentino v. Carter-Wallace*, 97 F.3d 1227 (9th Cir. 1996)...................................20

26

*Wehner v. Syntex Corp.*, 117 F.R.D. 641 (N.D. Cal. 1987)....................................18

27

*West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971)....................12

28

*Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ..16, 18

Zincser v. Accufix Research Institute, Inc*., 253 F.3d 1188 (9th Cir. 2001)*...........19

**Statutes**

Consumer Legal Remedies Act ("CLRA") Cal. Civ. Code§§ 1750 *et seq.* ..............4

False Advertising Law, Cal. Business & Professions Code §§ 17500 *et seq*...........4

Fed. R. Civ. Proc. 23......................................................................... passim

Unfair Competition Law, Business & Professions Code §§ 17200 *et seq* ...............4

**Other Authorities**

Herbert B. Newberg, *Newberg on Class Actions* § 11.25 *et seq*., and § 13.64 (4th
    ed. 2002 and Supp. 2004) .....................................................................11

James Wm. Moore, *Moore's Federal Practice – Civil* § 23.165[3] (3d ed.) ..........12

*Manual for Complex Litigation* (Fourth) (Fed. Judicial Center 2004) ("*Manual*")
    § 21.63, *et seq* ...........................................................................10, 11, 12

**PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

iv

## MEMORANDUM OF POINTS & AUTHORITIES

### I.   INTRODUCTION

Plaintiffs Richard Winters and Jake Gruber ("Plaintiffs"), individually and on behalf of the "Settlement Class" (as defined below), hereby submits this motion for preliminary approval of a proposed settlement (the "Settlement") of this action (the "Litigation") and of certification of the proposed settlement class.  Defendant TWO TOWNS CIDERHOUSE INC. ("Defendant")[1] does not oppose Plaintiffs' motion (Plaintiffs and Defendant shall collectively be referred to as the "Parties").  The terms of the Settlement are set forth in the Settlement Agreement and Release (hereinafter the "Agreement").[2]  *See Declaration of Todd M. Friedman* (*"Friedman Decl."*), Ex A.

The Settlement resulted from the Parties' participation in an all-day mediation session before the Honorable Andrew J. Guilford (Ret.) of Judicate West and subsequent settlement discussions.  The Settlement provides for a substantial financial benefit to each Settlement Class Member ("Member").  The Settlement Class consists of:

> *All persons within the United States who purchased the following 2 Towns Products as consumers within four years prior to the filing of the original Complaint until the the Class Notice Date[3]: Bright Cider; Easy Squeezy; Pacific Pineapple; Made Marion; Ginja Ninja; Outcider, Bad Apple, Cherried Away, Cot in the Act, Sun's Out Saison, Nice & Naughty, Rhubarbarian, Pearadise, Prickly Pearadise, Serious Scrump, and Imperial Hop & Stalk.[4]*

---

[1] Defendant's correct entity name is Forbidden Fruit Ciderhouse, LLC, doing business as 2 Towns Ciderhouse.  Any references to 2 Towns or Two Towns includes Forbidden Fruit Ciderhouse, LLC.

[2] Unless otherwise defined herein, capitalized terms used in this memorandum shall have the same meaning ascribed to them in the Agreement.

[3]  The Class Period is from March 12, 2016 through the Class Notice Date, which is twenty (20) days after the Court grants preliminary approval of the Settlement.

[4] These products are collectively referred to as "Class Products."

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

1

The Settlement reached with the guidance of Judge Guilford was a common fund settlement that provides a weighted pro rata distribution of the Total Distributable Settlement Fund depending on the number of claims made and the total number and distribution of Products claimed.

The Settlement requires internet publication of the Class Notice explaining key terms of the Settlement, including benefits under the Settlement and how to opt out of or object to the Settlement.  The benefits for Members who do not opt out of the Settlement include the following:  Each Member who selects the number of each Class Product they purchased during the Class Period will receive a weighted pro rata distribution of the Total Distributable Settlement Fund, depending on the number of claims made, and the total number and distribution of[5] Products claimed. See Agreement § 5.1.  There will be a cap of 10 Class Products per class member for those Class Members who do not have proof of purchase. See Agreement § 5.1. If any Class Member wishes to make a claim for more than 10 Class Products, proof of purchase will be required and must be provided to the Claims Administrator. See Agreement § 5.1.

The Settlement also provides for strong public injunctive relief for the benefit of Class Members and the general public, in that after the Preliminary Approval Date, Defendant shall cease using DL-Malic Acid in the Products and shall use L-Malic Acid in the Products.  Agreement § 2.1.

The settlement provides for a common fund totaling $985,000.00 in monetary relief.  See Agreement § 2.2.1. Any attorneys' fees and costs approved by the Court shall be paid to Class Counsel from the Settlement Fund.[6]  This Settlement

---

[5] Products that sell at a higher MSRP will be proportionately valued at a higher payout as compared with products that sell at a lower MSRP.

[6] Class Counsel will request attorneys' fees in an amount equal to 25% of the Common Fund under the percentage of the fund method and will substantiate this request with a lodestar cross check at Final Approval.

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

2

Agreement is not conditioned on the Court's approval of any attorneys' fees and costs sought by Class Counsel.  Agreement at § 2.2.2.

While Plaintiffs are confident of a favorable determination on the merits, they have determined that the Settlement provides significant benefits to the Class and is in the best interests of the Class.  Plaintiffs also believe that the Settlement is appropriate because Plaintiffs recognize the expense and amount of time required to continue to pursue the litigation, as well as the uncertainty, risk, and difficulties of proof inherent in prosecuting such claims.  Similarly, as evidenced by the Agreement, Defendant believes that it has substantial and meritorious defenses to Plaintiffs' claims, but has determined that it is desirable to settle the Litigation on the terms set forth in the Agreement.

Plaintiffs believe that the Settlement satisfies all criteria for preliminary approval.  Accordingly, Plaintiffs move this Court for an order preliminarily approving the Settlement, provisionally certifying the Settlement Class pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) for settlement purposes, directing dissemination of Class Notice, and scheduling a Final Approval Hearing.

## II.  STATEMENT OF FACTS

### A.  Factual Background

Defendant manufactured the cider with all relevant packaging and materials. On the box of the ciders, Defendant advertised that the ciders did not contain artificial flavors.  In relevant part, the box contained the following statement:

> Nothing Artificial: NO concentrates or refined sugars; NO essences or artificial flavors; NO velcorin or sorbate.

Plaintiffs reviewed Defendant's labeling and chose to purchase Defendant's products in lieu of other cider products because of Defendant's statements that its cider did not contain artificial flavors.  Plaintiffs wanted cider that was only flavored with apples or other real fruit.  Plaintiffs were drawn to the cider because of the

written advertisements on the side of the box, which gave them the impression that 2 Towns cider would meet their needs and expectations.  Relying on the assurance that the 2 Towns cider would not contain artificial flavors or ingredients, Plaintiffs decided to purchase the cider.

After purchasing the cider Plaintiffs learned that the common additive Malic Acid was often artificial, and that Malic Acid is often a flavoring in products. Counsel's office performed an investigation into 2 Towns' cider products and determined that the Malic Acid in Defendant's products was indeed artificial. Counsel also tested the actual products purchased by both named Plaintiffs and found that the products purchased by Plaintiffs contained artificial Malic Acid.

Plaintiffs felt ripped off and cheated by Defendant.  Defendant expressly represented to Plaintiffs, through written statements, that the cider products would not contain artificial flavors or ingredients, and lab testing strongly supported a finding that this statement was false.  Plaintiffs allege that such representations were part of a common scheme to mislead consumers and incentivize them to purchase 2 Towns' cider products.  Defendant vigorously disputes Plaintiffs' Claims and denies all charges of wrong doing or liability asserted against it in the Litigation.

## B.   Proceedings to Date

Plaintiff Richard Winters ("Winters") filed the initial class action complaint ("Complaint") on March 12, 2020.  In the Complaint, Winters alleged causes of action for violations of Unfair Competition Law, Business & Professions Code §§ 17200 *et seq* ("UCL"), and the False Advertising Law, Cal. Business & Professions Code §§ 17500 *et seq*. ("FAL")*.  On May 26, 2020, Winters filed a First Amended Complaint adding a cause of action for violations of the Consumer Legal Remedies Act ("CLRA") Cal. Civ. Code§§ 1750 *et seq.  On July 15, 2020, Plaintiffs filed a Second Amended Complaint ("SAC") adding Plaintiff Jake Gruber as a representative Plaintiff, a proposed Illinois sub-class, and adding a cause of action

for violations of the Illinois Consumer Fraud Act ("ILCFA") 815 ILCS 505/1 *et seq.*

Based on those allegations, Plaintiffs sought restitution, actual damages, punitive damages, and injunctive relief. Prior to Defendant filing an answer the Parties agreed to attend a class wide mediation.

The Parties attended mediation with the Hon. Andrew J. Guilford, Ret. of Judicate West. on June 5, 2020 and committed to trying to resolve all of Plaintiffs' claims on behalf of the classes. The Parties did not resolve the case at the mediation on June 5, 2020, but subsequently resolved the matter shortly thereafter via Judge Guilford over the course of several follow up sessions, which required two mediator's proposals for various aspects of the Settlement. Through his guidance, a nationwide[7] class action Settlement was reached. *See Friedman Decl*, ¶ 11. As set forth below, Plaintiffs respectfully request that the Court approve the Settlement.

**C.   Statement of Facts**

    **1.   The Settlement Class**

        **a.   The Settlement Class**

The "Settlement Class" is defined in the Agreement as follows:

*All persons within the United States who purchased the following 2 Towns Products as consumers within four years prior to the filing of the original Complaint until the Class Notice Date: Bright Cider; Easy Squeezy; Pacific Pineapple; Made Marion; Ginja Ninja; Outcider, Bad Apple, Cherried Away, Cot in the Act, Sun's Out Saison, Nice & Naughty, Rhubarbarian, Pearadise, Prickly Pearadise, Serious Scrump, and Imperial Hop & Stalk.* (Agreement § 2.2.1, p. 9)

        **b.   Class Membership Determination**

The Settlement Class consists of all persons who purchased the Products, as stated above. Defendant produced sales data showing the distribution of Class

---

[7] It should be pointed out that Defendant only distributed products to nine states: Oregon, California, Washington, Illinois, Idaho, Minnesota, Hawaii, Montana, and Arizona. 96% of the sales of the products were concentrated in four states: Oregon, California, Washington and Illinois.

**PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

5

Products, varieties of Class Products, sales MSRPs and revenues of each Class Product, as well as the distribution of sales volume in each state they were sold. Defendant advised that it sold 1,975,351 case equivalents[8] of the Class Products during the Class Period. Class Counsel and the Claims Administrator, through a variety of methods, and based on historic sales data of potential consumers in the target market, estimate that there are between 1 and 2 million class members,[9] after reviewing and analyzing this data and information.

### 2. *Settlement Payment*

Under the Proposed Settlement, Defendant agrees to establish a Settlement Fund in the amount of $985,000.00 (Agreement § 2.2.1, p. 9) in order to fund the following: (1) providing notice to Class Members;[10] (2) providing settlement checks to Class Members entitled to receive a settlement check; (3) creating and maintaining the Settlement Website; (4) maintaining a toll-free telephone number; (5) providing CAFA notice; (6) to pay the proposed $7,500 Incentive Payment to Plaintiff Richard Winters and the proposed $5,000 Incentive Payment to Plaintiff Jake Gruber (Agreement § 2.2.3, p. 10); and (7) payment of the proposed Attorneys' Fees of $246,250 (25% of the Settlement Fund) and litigation costs of up to $20,000 (Agreement § 2.2.2, p. 9). *See Friedman Decl*, ¶ 28. Any funds remaining after payment of all settlement costs and Payments to the Settlement Class shall be paid

---

[8] A case equivalent is equal to twenty-four (24) 12-ounce cans or 2.25 gallons.

[9] The variance in class size is dependent on the average number of purchases by Class Members. For instance, there would be half as many unique Class Members if the average Class Member purchased twice as many units of Class Product. While the total units purchased is known with specificity, how many unique consumers purchased these fixed number of units can only be extrapolated because Defendant does not have specific sales data for the end consumers. Such is typical of a case of this nature.

[10] Class Counsel are agreeing, as part of the mediator's proposal by Judge Guilford, to advance certain hard costs of Notice to the administrator, and will request reimbursement of these costs from the Common Fund separate and apart from the requested litigation costs.

to Public Justice, a non-profit organization dedicated to consumer rights advocacy, which dedicates an entire branch of its organization to advocating for accuracy of product labels and its importance to consumers.  (Agreement § 5.5, p. 20.)

In addition to monetary relief, Defendant has agreed to no longer use artificial DL-Malic Acid and instead only use natural L-Malic Acid in its ciders.[11]  This meaningful policy change serves as additional injunctive relief that benefits the Class Members.

### 3.   Monetary Benefit to Class Members and Class Notice

The Settlement Agreement provides for $985,000 in cash benefits (minus administration Costs, attorney's fees, and litigation costs) to Class Members on a pro rata basis after the claims period.  Claims Forms will be available on the Settlement Website, where Class Members can submit an online Claim for the exact number and distribution of Class Products that they purchased.  Class Members' pro rata distribution of payouts will be based on a formula, specified in § 5.1 of the Agreement, which will weight the value of products claimed based on their MSRP compared with other Class Products.  For example, a Class Member who bought a $10 MSRP product will be assigned a weighted value of 1.0 for that claim.  A Class Member who Bought one $4 MSRP product and one $10 MSRP product will be assigned a weighted value of 1.4 for that claim.  The Settlement Website will be maintained for at least 180 days.  (Agreement § 4.2.2, p. 13).  There will be Publication Notice, Radio Notice, and banner advertising on the Internet providing 11 million total impressions.  (Agreement § 4.3, p. 14).

The Claims Period will commence after the entry of the Preliminary Approval Order and this Claims Period will remain open to all Class Members to: submit a Claim by the last date of the 90-day "Claim Period", which will be 110 days

---

[11] This is not a trivial change.  Defendant will incur expense to make these changes, and public injunctive relief is one of the core substantive codified remedies available to the Class Members under the UCL.

following entry for the Preliminary Approval Order.  (Agreement § 5.1, p. 15); Class Members who Opt Out, must postmark before the Objection Deadline, which will be 75 days following entry for the Preliminary Approval Order (Agreement § 5.4, p. 19); and the deadline to Opt Out and Object will also be 75 days following entry for the Preliminary Approval Order (Agreement § 5.4, p. 19).

### 4.   Scope of Release

The scope of the release by all Class Members who do not request exclusion includes any and all claims against the Released Parties arising out of purchases of the Products during the Class Period, and relating to the allegations in the Complaint. (Agreement § 1.22, p. 7).  The release of claims does not extend to claims beyond those that related specifically to conduct in the pleadings, i.e. the products liability for personal injuries caused by consumption of the Products.

As such, Plaintiffs' believe the release is appropriately narrow in scope.

### 5.   Opportunity to Opt Out and Object

As explained before, Class Members who Opt Out, must postmark before the Objection Deadline, which will be 75 days following entry for the Preliminary Approval Order (Agreement § 5.4, p. 19); and the deadline to Opt Out and Object will also be 75 days following entry for the Preliminary Approval Order (Agreement § 5.4, pp. 19).  Any Class Member who does not opt out and objects to the proposed settlement must mail his or her objection(s) in writing to the Court. To be considered timely, an Objection must be postmarked on or before the Opt-Out and Objection Deadline specified on the Settlement Website, which will be 75 days following entry for the Preliminary Approval Order.  (*Id*.)  Any Objection must set for the name and case number of this matter, the objecting Class Member's name, address, telephone number and all arguments, citations and evidence supporting the objection.  Furthermore, the Objection shall include: whether the objector intends to appear at the hearing, with or without counsel; the name and case number of any other proposed class action settlement the Class Member submitted an objection to;

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

8

1   and whether any such objection was submitted on the Class Member's behalf or on

2   behalf of a represented third party. (*Id.*)

3   ### 6.   Payment of Notice and Administrative Costs

4   Defendant will make a single payment of $985,000 into an escrow account

5   held by the Settlement Administrator. (Agreement § 2.2, pp. 9-11). The Settlement

6   Administrator will use these funds to administer all costs of the settlement,

7   including providing Class Notice, proving CAFA notice, maintaining the website

8   and toll-free number and arranging for payments to Class Members. (*Id.*) The

9   funds shall also be used to cover Attorneys' Fee Award to Class Counsel and the

10  Incentive Awards to Plaintiffs. (*Id.*) Class Counsel have agreed, based on an

11  interim ruling by Judge Guilford after mediation, to advance the hard costs of Class

12  Notice,[12] estimated at approximately $155,000, and seek reimbursement of these

13  expenditures as a cost of suit at Final Approval.

14  ### 7.   Class Representative's Application for Incentive Award

15  The proposed Settlement contemplates that Class Counsel will request an

16  Incentive Award in the amount of $7,500 to be distributed to the Class

17  Representative Richard Winters, and an Incentive Award in the amount of $5,000

18  to be distributed to the Class representative Jake Gruber, subject to Court approval.

19  Defendant has agreed not to oppose the request as long as it is not greater than the

20  agreed upon amount. (Agreement § 2.2.3, p. 10).

21  ### 8.   Class Counsel's Application for Attorneys' Fees, Costs and
22  Expenses

23  The proposed Settlement contemplates that Class Counsel shall be entitled to

24  apply to the Court for an award of attorneys' fees in the amount of $246,250 (25%

25  of the Settlement Fund) and litigation costs of less than $20,000. (Agreement §

26  2.2.2, p. 9). Pursuant to the proposed Settlement, Defendant will not oppose the

27
28  [12] This accounts for the expense of internet and radio publication. Class Counsel
     will compensate the administrator for these expenses and seek reimbursement.

1  application, as long as it does not exceed this stated amount. (*Id.*)

2  **9.    Cy Pres Distribution.**

3  Under the proposed Settlement, any funds remaining after payment of all

4  settlement costs and Payments to the Settlement Class shall be paid to Public

5  Justice.[13]  (Agreement § 5.5, p.20).  Public Justice is a not for profit consumer

6  advocacy group which fights for consumer rights issues, such as those at issue in

7  this case.  Public Justice staff attorneys fight against injustices perpetrated by

8  corporations against consumers, including by food producers.  For instance, Public

9  Justice's Food Product works for hold corporations accountable by advocating for

10  a sustainable and natural food source, a cause directly related to this litigation.

11  Since, the distribution is pro-rata for those who file Claims Forms, this *cy pres*

12  distribution will equal the amount for those who file Claims Forms and then

13  essentially disappear or refuse to timely deposit a check.  As a result, it is not

14  expected to be substantial.

15  **III.    ARGUMENT**

16  **A.    The Legal Standards for Preliminary Approval of a Class Action**

17  **Settlement**

18  A class action may not be dismissed, compromised or settled without the

19  approval of the court. Fed. R. Civ. Proc. 23(e).  Judicial proceedings under Rule 23

20  have led to a defined procedure and specific criteria for settlement approval in class

21  action settlements, described in the *Manual for Complex Litigation* (Fourth) (Fed.

22  Judicial Center 2004) ("*Manual*") § 21.63, *et seq.*, including preliminary approval,

23  dissemination of notice to class members, and a fairness hearing.  *Manual*,

24  §§ 21.632, 21.633, 21.634.  The purpose of the Court's preliminary evaluation of

25  the settlement is to determine whether it is within the "range of reasonableness,"

26  _____

27  [13] Public Justice recently launched the Food Project Attorney Network which is the
only legal project in the country that works to hold industrial agriculture corporations

28  accountable and fosters a more sustainable food system.

1    and thus whether notice to the class of the terms and conditions of the settlement,

2    and the scheduling of a formal fairness hearing, are worthwhile.  *See* 4 Herbert B.

3    Newberg, *Newberg on Class Actions* § 11.25 *et seq*., and § 13.64 (4th ed. 2002 and

4    Supp. 2004) ("*Newberg*").   The Court is not required to undertake an in-depth

5    consideration of the relevant factors for final approval.  Instead, the "judge must

6    make a preliminary determination on the fairness, reasonableness, and adequacy of

7    the settlement terms and must direct the preparation of notice of the certification,

8    proposed settlement, and date of the final fairness hearing." *Manual*, § 21.632 (4th

9    ed. 2004).

10         As a matter of public policy, settlement is a strongly favored method for

11   resolving disputes.  *See Utility Reform Project v. Bonneville Power Admin*., 869

12   F.2d 437, 443 (9th Cir. 1989).  This is especially true in class actions such as this.

13   *See Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982).  As

14   a result, courts should exercise their discretion to approve settlements "in

15   recognition of the policy encouraging settlement of disputed claims."   *In re*

16   *Prudential Sec. Inc. Ltd. Partnerships Litig*., 163 F.R.D. 200, 209 (S.D.N.Y. 1995).

17   To make the preliminary fairness determination, courts may consider several

18   relevant factors, including "the strength of the plaintiff's case; the risk, expense,

19   complexity, and likely duration of further litigation; the risk of maintaining class

20   action status through trial; the amount offered in settlement; the extent of discovery

21   completed and the stage of the proceedings; [and] the experience and views of

22   counsel . . . ." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)

23   ("*Hanlon*").   Furthermore, courts must give "proper deference to the private

24   consensual decision of the parties," since "the court's intrusion upon what is

25   otherwise a private consensual agreement negotiated between the parties to a

26   lawsuit must be limited to the extent necessary to reach a reasoned judgment that

27   the agreement is not the product of fraud or overreaching by, or collusion between,

28   the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable

**PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

11

1   and adequate to all concerned." *Id.* at 1027.

2        Preliminary approval does not require the Court to make a final determination

3   that the settlement is fair, reasonable, and adequate.  Rather, that decision is made

4   only at the final approval stage, after notice of the settlement has been given to the

5   class members and they have had an opportunity to voice their views of the

6   settlement or to exclude themselves from the settlement.  *See* 5 James Wm. Moore,

7   *Moore's Federal Practice – Civil* § 23.165[3] (3d ed.)  Thus, in considering a

8   potential settlement, the Court need not reach any ultimate conclusions on the issues

9   of fact and law which underlie the merits of the dispute, *West Va. v. Chas. Pfizer &*

10  *Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971), and need not engage in a trial on the merits,

11  *Officers for Justice v. Civil Service Comm'n,* 688 F.2d at 625.  Preliminary approval

12  is merely the prerequisite to giving notice so that "the proposed settlement . . . may

13  be submitted to members of the prospective class for their acceptance or rejection."

14  *Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp.

15  364, 372 (E.D. Pa. 1970).

16       Preliminary approval of the settlement should be granted if, as here, there are

17  no "reservations about the settlement, such as unduly preferential treatment of class

18  representatives or segments of the class, inadequate compensation or harms to the

19  classes, the need for subclasses, or excessive compensation for attorneys." *Manual*

20  *for Complex Litigation* § 21.632, at 321 (4th ed. 2004).   Furthermore, the opinion

21  of experienced counsel supporting the settlement is entitled to considerable weight.

22  *See., e.g.*,  *Kirkorian v. Borelli*, 695 F.Supp. 446 (N.D. Cal.1988) (opinion of

23  experienced counsel carries significant weight in the court's determination of the

24  reasonableness of the settlement); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622

25  (N.D. Cal. 1979). (Recommendations of plaintiffs' counsel should be given a

26  presumption of reasonableness).

27       The decision to approve or reject a proposed settlement "is committed to the

28  sound discretion of the trial judge[.]" *See Hanlon*, 150 F.3d at 1026.  This discretion

1   is to be exercised "in light of the strong judicial policy that favors settlements,

2   particularly where complex class action litigation is concerned," which minimizes

3   substantial litigation expenses for both sides and conserves judicial resources. *See*

4   *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quotations

5   omitted).

6       Based on these standards, Plaintiffs respectfully submit that, for the reasons

7   detailed below, the Court should preliminarily approve the proposed Settlement as

8   fair, reasonable and adequate.

9   **B.    <u>Liability is Highly Contested and Both Sides Face Significant</u>**

10       **<u>Challenges in Litigating this Case</u>**

11       Defendant has vigorously contested the claims asserted by Plaintiffs in this

12   Litigation, which is described in detail in the contemporaneous declaration of Mr.

13   Friedman. See Friedman Decl. ¶¶ 41-44. First, Defendant denies that artificial DL-

14   Malic Acid is uniformly added to its products and is instead only added to certain

15   batches of cider that require acidity balancing.  This could cause a serious

16   hinderance to class certification because the true members of the class would be

17   indistinguishable from consumers that purchased Defendant's products without

18   artificial DL-Malic Acid, absent individualized testing.  While Plaintiffs disagree

19   and believe methods could be used to identify Class Members manageably and

20   believe that Ninth Circuit authority holds such a challenge to be irrelevant to the

21   Rule 23 analysis, some courts have agreed with the arguments anticipated from

22   Defendant.  Second, Defendant contended that artificial DL-Malic Acid did not act

23   as a flavor in its products and therefore Defendant's labeling is not deceptive (a

24   merits argument).  Again, while Plaintiffs strongly disagree with this position, such

25   would have undermined the entire case, if the Court was persuaded by Defendant's

26   position.  There are also questions as to damages that are not insignificant – i.e.

27   determining how much consumers were actually harmed by the mislabeling, when

28

most consumers likely placed small value on the added statements on the labels.  It is likely that a conjoin survey would have resulted in a small percentage of the purchase price being attributed to this one advertised characteristic, and unlikely that consumers would be legally entitled to a full refund, or even anything approaching half of their purchase price being returned to them as a result of the alleged mislabeling at issue.

While both sides strongly believed in the merits of their respective cases, there are clearly numerous palpable risks to both sides in continuing the Litigation.  *See Friedman Decl*, ¶¶ 41-47.  If the Litigation were to continue, challenges would likely be made to any class certification motion made by Plaintiffs, thereby placing in doubt whether certification of a class could be obtained and/or maintained in the Litigation.  Also, additional substantive challenges to the claims might be raised, including a challenge on summary judgment, and thereafter as to damages.  The law is fluid in many of these areas, which means that inevitably there would be appeals that would drag out for years.  Ultimately, Class Counsel anticipate that the average consumer who makes a claim will receive a 31% refund on the price they paid for Class Products, and that the average Class Member payout will be approximately $17.70.  This is based on a review of the sales data, and lengthy discussion s with the Claims Administrator.  *Friedman Decl*. ¶¶ 38.  In considering the Settlement, Plaintiffs and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation, against the benefits to the Class.  As a result, Class Counsel supports the Settlement and seek its Preliminary Approval. *Id*. ¶¶ 45-47.

Similarly, Defendant believes that it has strong and meritorious defenses not only to the action as a whole, but also as to class certification and the amount of damages sought. However, Defendant recognizes that if a class were certified, the potential amount of damages could be significantly higher than the settlement amount at issue.

---

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

14

The negotiated Settlement reflects a compromise between avoiding that risk and the risk that the class might not recover.  Because of the costs, risks to both sides, and delays of continued litigation, the Settlement presents a fair and reasonable alternative to continuing to pursue the Litigation.

**C.**   **Defendant's Agreement to Finance the Common Benefit Fund Provides a Fair and Substantial Benefit to the Class**

As set forth above, Defendant has agreed to pay $985,0000 to fund the settlement, which includes notice and claims administration costs, creating and maintaining a Settlement Website and toll free number, providing CAFA notice, an Incentive Award to Plaintiff Richard Winters  in the amount of $7,500 and an Incentive Award to Plaintiff Jake Gruber in the amount of $5,000,  and attorneys' fees in the amount of $246,250 and reimbursement of litigation costs of up to $20,000, plus advanced notice costs. *See Friedman Decl*, ¶ 31.  It is anticipated that the net settlement fund after these deductions, will be approximately $466,103.  Friedman Decl. ¶ 13.

**D.**   **The Settlement was Reached as the Result of Arms-Length Negotiation, Without Collusion, with the Assistance of the Mediator**

The proposed Settlement is the result of intensive arms-length negotiation, including an all-day mediation session before the Hon. Andrew J. Guilford, Ret. of Judicate West on June 5, 2020.  The Parties did not resolve the case at the mediation on June 5, 2020, but subsequently resolved the matter shortly thereafter via Judge Guilford.  With the guidance of Judge Guilford, and working independently of the Court, the Parties were able to reach a proposed resolution of this case. This required two separate mediator's proposals and significant post-mediation negotiations. *See Friedman Decl.* ¶ 9.  The time and effort spent examining and investigating the claims militate in favor of preliminary approval of the proposed Settlement, as the process strongly indicates that there was no collusion. *See In re*

**PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

15

1 *Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008)

2 ("Settlements that follow sufficient discovery and genuine arms-length negotiation

3 are presumed fair.").[14]

4 **E.    The Settlement Experienced Counsel Have Determined that the**

5 **Settlement is Appropriate and Fair to the Class**

6 The Parties are represented by counsel experienced in complex class action

7 litigation. Class Counsel has extensive experience in class actions, as well as

8 particular expertise in class actions relating to consumer protection. *See Friedman*

9 *Decl*, ¶¶ 48-52. Class Counsel believe that under the circumstances, the proposed

10 Settlement is fair, reasonable and adequate and in the best interests of the Class

11 Members. *See Friedman Decl*, ¶¶ 45-47.

12 **F.    The Court Should Preliminarily Certify the Class for Purposes of**

13 **Settlement**

14 Courts have long acknowledged the propriety of class certification for

15 purposes of a class action settlement. *See In re Wireless Facilities*, 253 F.R.D. at

16 610 ("Parties may settle a class action before class certification and stipulate that a

17 defined class be conditionally certified for settlement purposes"). Certification of a

18 class for settlement purposes requires a determination that certain requirements of

19 Rule 23 are met. *Id.*  As explained below, class certification is appropriate here

20 because the Proposed Settlement meets the requirements of Rule 23(a) and Rule

21 23(b)(3) for settlement purposes.

22 **G.    The Proposed Class is Numerous.**

23 Class certification under Rule 23(a)(1) is appropriate where a class contains

24 so many members that joinder of all would be impracticable. "Impracticability does

25 not mean 'impossibility,' but only the difficulty or inconvenience of joining all

26 members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909,

27

28 [14] If necessary, Judge Guilford has graciously offered to provide a declaration to the Court regarding the arms-length nature of negotiations.

913-14 (9th Cir. 1964) (citation omitted).  Here, the Settlement Class consists of an estimated 1 million to 2 million consumers who purchased Class Products during the Class Period. Thus, the proposed Class is sufficiently numerous for purposes of certifying a settlement class.

### H.   The Commonality Requirement is Satisfied, Because Common Questions of Law and Fact Exist.

The commonality requirement is met if there are questions of law and fact common to the class. *Hanlon*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent legal factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.").  Here, for purposes of settlement, the proposed Class Members' claims stem from the same factual allegation - specifically that Defendant *allegedly* sold cider products that were mislabeled as containing "Nothing Artificial: NO concentrates or refined sugars; NO essences or artificial flavors; NO velcorin or sorbate" when those products contained artificial DL-Malic Acid during the Class Period.

Plaintiffs' claims also present questions of law that are common to all members of the Class for settlement purposes, including: (1) whether the Defendant intentionally, negligently, or recklessly disseminated false and misleading information by including the statement "Nothing Artificial: NO concentrates or refined sugars; NO essences or artificial flavors; NO velcorin or sorbate" on the Products' packaging; (2) whether the Class Members were informed of the artificial nature of the ingredients in the Products; (3) whether the Products contain artificial flavoring; (4) whether Defendant's conduct was unfair and deceptive; (5) whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above; and (6) whether the statement "Nothing Artificial: NO concentrates or refined sugars; NO essences or artificial flavors; NO velcorin or sorbate" is misleading or false.  The Settlement Class Members all seek the same remedy, and were all exposed to the same product packaging.   Under these circumstances, the

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

17

commonality requirement is satisfied for purposes of certifying a settlement class. *See Hanlon,* 150 F. 3d at 1019-20.

## I.   The Typicality Requirement is Met.

The typicality requirement is met if the claims of the named representatives are typical of those of the class, though "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  For purposes of settlement, Plaintiffs' claims are typical of the class because they arise from the same factual basis – purchase of the Products – and are based on the same legal theory – the Products labeling was deceptive.  *See Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987).  The Class Representatives claim that they purchased the Products pursuant to the Defendant's labeling.  Plaintiffs' products were both tested by Class Counsel's expert, and the tests definitively concluded that the products contained artificial malic acid, as alleged in the Complaint.  Accordingly, the Class Representative's claims are typical of those of the Settlement Class.  Thus, the typicality requirement is satisfied for purposes of certifying a settlement class.

## J.   The Adequacy Requirement is Satisfied.

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Court must measure the adequacy of representation by two standards: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Wireless Facilities*, 253 F.R.D. at 611 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003)).

Plaintiffs and Class Counsel have no conflicts of interest with other Class Members because, for purposes of the Settlement, Plaintiffs' claims are typical of those of other Settlement Class Members. In addition, Plaintiffs and Class Counsel have been prosecuting this Litigation vigorously on behalf of the Class.  Plaintiffs and Class Members share the common goal of protecting and improving consumer

**PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

18

rights regarding the accurate labeling of food and beverage items throughout the nation, and there is no conflict among them.  Class Counsel have extensive experience in consumer litigation, including the prosecution of class actions seeking to consumer rights.  Class Counsel is qualified to represent the interests of the Class. Rule 23(a)(4) is therefore satisfied for purposes of certifying a settlement class.

### K.      Common Questions Predominate, Sufficient to Certify a Class for Settlement Purposes Only.

Class certification under Rule 23(b)(3) is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  The inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162 (9th Cir. 2001).*  Central to this question is "'the notion that the adjudication of common issues will help achieve judicial economy.'" *Zincser v. Accufix Research Institute, Inc*., 253 F.3d 1188, 1189 (9th Cir. 2001) (citation omitted), amended, 273 F. 3d 1266 (9th Cir. 2001).

Here the central inquiries for purposes of the Proposed Settlement are whether Defendant violated the UCL, FAL, CLRA, and ILCFA by labeling its Products as containing "Nothing Artificial: NO concentrates or refined sugars; NO essences or artificial flavors; NO velcorin or sorbate" when the Products contained artificial DL-Malic Acid.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

### L.      Class Treatment for Settlement Purposes is Superior to Individual Resolutions.

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alternative methods for

adjudicating the parties' claims. Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement. "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartenders Trust Fund*, 244 F.3d at 1163. *See also, Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").

Consideration of the factors listed in Rule 23(b)(3) supports the conclusion that, for purposes of a settlement class, certification is appropriate. Ordinarily, these factors are (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

However, when a court reviews a class action settlement, the fourth factor does not apply. In deciding whether to certify a settlement class action, a district court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods. Inc. v. Woodward*, 521 U.S. 591, 620 (1997). "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious . . . ." *Elkins v. Equitable Life Ins. of Iowa*, No. Civ A96-296-Civ-T-17B, 1998 WL 133741, at *20 (M.D. Fla. Jan. 27, 1998); *see also Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (Rule 23(b)(3)(C) and (D) factors are "'conceptually irrelevant in the context of settlement'") (citation omitted). Here, most of the Rule 23(b)(3)(A), (B) and (C) factors all favor class certification:

- Any Settlement Class Member who wishes to pursue a separate action can opt out of the Settlement.

- Plaintiffs believe this forum is appropriate, and Defendant has not opposed the forum.

**M.** **The Proposed Class Notice is Consistent with Ninth Circuit Requirements and Provides Adequate Notice for Claims, Objections and Opt Outs.**

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must order the "best notice practicable" under the circumstances. Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.

Pursuant to Fed. R. Civ. P. 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) also sets forth requirements as to the content of the notice. The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The Settlement Administrator shall disseminate or arrange for the dissemination of Class Notice through the Publication Notice via banner advertisement on the Internet, radio advertisements, and newspaper advertisements

(Agreement § 4.3, p. 14), the Settlement Website, which will contain the Q & A Notice (Ex. B to the Agreement), the Claim Form, the Settlement Agreement, the Preliminary Approval Order, Plaintiffs' fee brief and an online submission for Claims Forms. Further, pursuant to the Agreement "any other materials the Parties agree to include" may be put on the Website. (Agreement § 4.2, p.13). The Class Notice here satisfies each of the requirements of Rule 23(c)(2)(B) above.

It is important to note for purposes of this element of approval two reasons in this case why publication Notice is the best notice practicable. First and foremost, Defendant does not sell products directly to consumers, instead operating as a distributor to retailers. As such, while Defendant maintains sufficient sales data for Class Counsel to evaluate the merits and scope of the case for purposes of certification and damages issues, Defendant does not maintain any lists of consumer data that might be used by an administrator to provide direct notice. Equally if not more important, even if specific sales data were available for consumers such that direct notice could be mailed to their homes, the cost of doing this would be extraordinarily cost prohibitive. In fact, based on Class Counsels' experience with class notice in a class the size of this case, notice costs would likely be around $1 million to send direct notice postcards, and the anticipated participation rate would only marginally increase as a result of these added expenses. Given the amount of the common fund at issue, it would not be feasible to incur such an expense, as the entirety of the fund would be consumed by the costs of notice, leaving Class Members with no monetary relief. Therefore, it is the strong opinion of Class Counsel that the Notice proposed, which was subject to extraordinarily detailed workup by Class Counsel and the Administrator, is the best notice practicable.

The notices and settlement documents will be disseminated and posted on the Settlement Website sufficiently prior to the Final Approval Hearing to give Settlement Class Members the opportunity to comment on the Settlement, or to opt out and preserve their rights. Specifically, Settlement Class Members will have 75

days from the time dissemination of Class Notice has been completed to opt out of the settlement or object. *Cf. Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1374-1375 (9th Cir. 1993) (31 days is more than sufficient, as Class as a whole had notice adequate to flush out whatever objections might reasonably be related to the settlement) (citing *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) (approving timing of notice which was mailed 26 days before the deadline for opting out of the settlement)).   Further, the Settlement Website shall be maintained and accessible to Settlement Class Members during this time and through the conclusion of the settlement proceedings in this case.

This notice program was designed to meaningfully reach the largest number of Settlement Class Members possible.  Publication notice will likely reach most Settlement Class Members, with P&N estimating that at least 75% of the Class will be reached with the proposed notice.  Schwartz Decl. ¶¶ 12, 28.  The concurrent dissemination of the Long Form Class Notice on the Settlement Website, combined with the Class Notice, satisfies the requirements of due process and constitutes the best notice practicable under the circumstances.  The Settlement Administrator shall prepare and file a declaration prior to the Final Approval Hearing certifying that the notice program has been properly administered in accordance with this Agreement, this Court's Orders, and as described herein.

## N.   **The Court Should Preliminarily Certify the Class for Purposes of Settlement.**

"[T]wo criteria for determining the adequacy of representation have been recognized. First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). The adequacy of representation requirement is met here.  For settlement purposes,

Class Counsel moves for Plaintiffs Richard Winters and Jake Gruber to be preliminarily appointed as the Class Representative.  Class Counsel requests that Todd M. Friedman and Adrian Bacon of The Law Offices of Todd M. Friedman, P.C. preliminarily be appointed as Class Counsel for purposes of the Settlement. Plaintiffs' counsel has extensive experience sufficient to be appointed as Class Counsel.  Plaintiffs understand the obligations of serving as a class representative, have adequately represented the interests of the putative class, and have retained experienced counsel.  Plaintiffs have no antagonistic or conflicting interests with the Settlement Class, and all members of the Settlement Class are eligible to receive the same benefits.

### O. The Court Should Appoint Postlethwaite & Netterville as the Settlement Administrator

The proposed Agreement recommends that the Court appoint Postlethwaite & Netterville, Inc. to serve as the Settlement Administrator. Postlethwaite & Netterville specializes in providing administrative services in class action litigation and has extensive experience in administering consumer protection and privacy class action settlements.  Defendant does not oppose this request.

### P. Final Approval Hearing Should be Scheduled

The last step in the settlement approval process is the formal fairness or Final Approval Hearing, at which time the Court will hear all evidence and argument, for and against, the proposed Settlement.  Plaintiffs request that the Court grant preliminary approval of the Settlement and schedule a Final Approval Hearing to be held not before 130 days after the date of entry of the Preliminary Approval Order, in order to allow sufficient time for providing CAFA Notice, the toll-free number and the Settlement Website, and completion of the period for class members to submit exclusion requests and objections.

**PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

24

IV.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order preliminarily approving the proposed Settlement and certifying a class for settlement purposes.

Date: July 28, 2020                    **The Law Offices of Todd M. Friedman, PC**

By:  _/s/ Todd M. Friedman_
Todd M. Friedman
*Attorneys for Plaintiffs*

## __CERTIFICATE OF SERVICE__

Filed electronically on this 28th day of July, 2020, with:

United States District Court CM/ECF system

Notification sent electronically on this 28th day of July, 2020, to:

Honorable Judge Cynthia A. Bashant
United States District Court
Southern District of California

And

All Counsel of Record

s/Todd M. Friedman
Todd M. Friedman, Esq.

**PROOF OF SERVICE**