**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD WINTERS and JAKE GRUBER, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWO TOWNS CIDERHOUSE, INC.,<br><br>Defendant. | Case No. 20-cv-00468-BAS-BGS<br><br>**ORDER:**<br><br>**(1) PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT;**<br><br>**(2) CONDITIONALLY APPROVING PROPOSED SETTLEMENT CLASS; AND**<br><br>**(3) SETTING HEARING OF FINAL APPROVAL OF SETTLEMENT**<br><br>**(ECF No. 21)** |

On March 12, 2020, Plaintiff Richard Winters filed a putative class action complaint for violations of California unfair competition law, pursuant to Calif. Bus. & Prof. Code §§17200 et seq. and §§17500 et seq. against Two Towns Ciderhouse, Inc. ("2 Towns"). (Compl., ECF No. 1.) Plaintiff amended that complaint twice, adding claims for a violation of California Consumer Legal Remedies Act, Cal. Civ. C. §§1750 et seq., and a violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq., and adding Jake Gruber as a named Plaintiff. (ECF Nos. 11, 18.) The gist of the allegations is that Defendant intentionally labeled its drink products with false and misleading claims that they contain no artificial flavors, when the products contained artificial Malic Acid (DL-Malic Acid) instead of non-artificial L-Malic Acid. (Compl. ¶1.)

Now pending before this Court is the Parties' joint motion for preliminary approval of class action settlement, which seeks an order conditionally certifying a proposed settlement class, preliminarily approving the class action settlement, and setting a hearing for final approval of the settlement. (Joint Mot., ECF No. 21.)

## I.     PROPOSED SETTLEMENT

The proposed settlement agreement applies to class members ("Class" or "Class Members") defined as:

> all persons within the United States who purchased the following 2 Towns products as consumers within four years prior to the filing of the original Complaint until the Class Notice Date: Bright Cider, Easy Squeezy, Pacific Pineapple, Made Marion, Ginja Ninja, or Outcider, Bad Apple, Cherried Away, Cot in the Act, Sun's Out Saison, Nice & Naughty, Rhubarbarian, Pearadise, Prickly Pearadise, Serious Scrump, and Imperial Hop & Stalk. Excluded from the class are 2 Towns and its employees and agents.

("Settlement" or "Settlement Agreement" §§ 1.7, 2.2.1, Ex. A to Decl. of Todd M. Friedman ("Friedman Decl."), ECF No. 21-1.)

The parties agree that the Class shall be provisionally certified (Settlement § 3), and that, subject to the Court's approval, the Law Offices of Todd M. Friedman, P.C. will be appointed as Class Counsel (*Id.* § 1.6), Richard Winters and Jake Gruber will be appointed as Class Representatives (*Id.* § 1.12 ), and  Postlethwaite and Netterville, APAC, will be appointed as Class Administrators. (*Id.* § 1.3.)

The Settlement Agreement outlines the agreed-upon injunctive relief. "No later than the Preliminary approval date, 2 Towns shall cease using DL-Malic Acid in [the designated class] products and shall use L-Malic acid" instead. (Settlement Agreement, § 2.1.1.)  Additionally, "within 30 days after the effective date, 2 Towns shall cause the statement 'Nothing Artificial' to be removed from packaging for products not already introduced into the stream of commerce [and] . . . from its website." (*Id.* § 2.1.2.)

Defendant also agrees to set up a common settlement fund of $985,000. (Settlement Agreement § 2.2.1.)  This settlement fund will be used to pay: (1) the costs and expense of notice and administration, not to exceed $250,000 (*Id.*); (2) any service award to the

Class Representatives not to exceed $7,500 for Richard Winters and $5,000 for Jake Gruber (*Id.* § 2.2.3); and (3) attorney's fees, not to exceed 25% of the settlement fund, and costs, not to exceed $20,000. (*Id.* § 2.2.2.) The Settlement Agreement is not conditioned on the Court's approval of any attorneys' fees or costs sought by Class Counsel. (*Id.*)

Any amount remaining will be distributed pro rata to Class Members who submit timely and valid claims to the Class Administrator. (Settlement Agreement, § 5.1.) Class Members may make claims, either by mail or via the Class Settlement Website. (*Id.*) Class Members will be able to select the number of each Class Product they purchased during the Class Period and will receive a weighted pro rata distribution of the remaining Settlement Fund, depending on the number of claims made and the total number and distribution of Class Products claimed. (*Id.*) There will be a cap of 10 Class Products per Class Member for those Class Members who do not have proof of purchase. (*Id.*) If any Class Member wishes to make a claim for more than 10 Class Products, proof of purchase will be required and must be provided to the Claims Administrator. (*Id.*) "The weighted pro rata share will be calculated based on the purchase prices of the products claimed, the number of products claimed, and the total number and distribution of products claimed by all participating Class Members." (*Id.*) The formula for the weight of each product is set forth in a detailed table in the Settlement Agreement. (*Id.*)

Any funds remaining after payment of all settlement costs, attorneys' fees, and payments to the settlement class shall be paid to Public Justice, a non-profit organization dedicated to consumer rights advocacy. (Settlement Agreement § 5.5.) Public Justice advocates for accurate product labels. Since the distribution is pro-rata for those who file Claims Forms, this *cy pres* distribution will equal the amount for those who file Claims Forms and then essentially disappear or refuse to timely deposit a check. As a result, it is not expected to be substantial.

## II. ANALYSIS

### A. Class Certification (for Settlement Purposes Only)

Here, the Parties seek to certify a class for settlement purposes only. Federal Rule of Civil Procedure 23(a) provides that a class may be certified "only if (1) the class is so numerous that joinder of members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition to meeting the 23(a) requirements, a class action must fall into one of the categories laid out in Rule 23(b). Fed. R. Civ. P. 23(b). The Parties seek to certify the class under Rule 23(b)(3). (Joint Mot. at 16.) Both 23(a) and 23(b) are satisfied in this case.

#### 1. Fed. R. Civ. P. 23(a)

##### a. *Numerosity*

The numerosity requirement is generally satisfied when the class contains 40 or more members, a threshold far exceeded in this case. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007). An estimated one to two million consumers purchased the products at issue during the class period. That number is on its face large enough that individual joinder of all class members would be impracticable. Fed. R. Civ. P. 23(a)(1) is therefore satisfied.

##### b. *Commonality*

Commonality requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Here, the class claims all stem from Defendant's alleged misrepresentations that its products had no artificial flavors. Because Class Members here have the same or similar allegations, there are common questions of law and fact and Fed. R. Civ. P. 23(a)(2) is satisfied.

### c. *Typicality*

In general, the claims of the representative parties "need not be substantially identical" to those of all absent class members and need only be "reasonably co-extensive" in order to qualify as typical. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 464 U.S. 338 (2011). Here, the Named Plaintiffs' claims that Defendant made misrepresentations as to artificial flavors are identical to those of the other Class Members. Fed. R. Civ. P. 23(a)(3) is therefore satisfied.

### d. *Adequacy of Representation*

For the class representatives to adequately and fairly protect the interests of the class, two criteria must be satisfied. "First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Here, Class Counsel appear qualified, competent, and experienced in class action lawsuits. (Friedman Decl. ¶¶ 48–54.) Named Plaintiffs appear able to prosecute the action vigorously and have no antagonistic or conflicting interests with the Class Members. (*Id.* ¶ 39). *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (service awards intended to compensate class representatives for work undertaken on behalf of a class are "fairly typical in class actions cases" and "do not, by themselves, create an impermissible conflict between class members and their representative[]."). Rule 23(a)(4) thus appears to be satisfied.

### 2. <u>Fed. R. Civ. P. 23(b)</u>

The Parties seek to maintain their class action under Fed. R. Civ. P. 23(b)(3). (Joint Mot. at 16.) Under Rule 23(b)(3), "Plaintiffs must also demonstrate that a class action is 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 448 (N.D. Cal. 2008) (citing Fed. R. Civ. P. 23(b)(3)). "Where classwide litigation of common issues will

reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation," and it is superior "if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996). The following factors are pertinent to this analysis:

(A) the class members' interest in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

In this case, the alternative to a class action would be to have the individual Class Members, between one and two million consumers, file separate lawsuits. That would be both impractical and inefficient. Such individual litigation would consume judicial resources, impose additional burdens and expenses on the litigants, and present a risk of inconsistent rulings. Thus, the Court finds class action is superior to other methods for fairly and efficiently adjudicating this controversy.

**B.   Fairness, Reasonableness, and Adequacy of the Proposed Settlement**

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, according to Federal Rule of Civil Procedure 23(e)(2), "the court may approve [a settlement that would bind class members] only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

In determining whether the proposed settlement is fair, reasonable, and adequate, "a district court must consider a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the amount offered in settlement; the extent of discovery completed, and the stage of proceedings; the

experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). The Court considers each of these factors below.

### 1. Strength of Plaintiff's Case, and Risk of Further Litigation

Although Plaintiffs believe they had a strong case, "Defendant denie[d] that artificial DL-Malic Acid is uniformly added to its products" and instead posited that it is "only added to batches of cider that require acidity balancing." (Friedman Decl. ¶ 10.) Additionally, Defendant "contended that artificial DL-Malic Acid did not act as a flavor in its products and therefore Defendant's labeling is not materially deceptive." (*Id.*) "Defendant also argued that the amount of harm to Class Members was minimal, because the mislabeling was not the driving force behind the price of the product, or its sales." (*Id.*)

Thus, any further litigation would have required employing expensive experts. Additionally, this settlement was reached early in the litigation. Without the settlement, any satisfaction was likely to take years. Hence, this factor weighs in favor of approving the settlement.

### 2. Consideration Offered

The consideration in this case involves both injunctive relief as well as some return on the cost of the product purchase. Although the amount of monetary compensation largely depends on the number of claims filed, Class Counsel, after discussing the matter with the proposed Class Administrator, opines that Class Members who file for monetary relief are likely on average to receive approximately $17.70, which represents a 31% refund on the purchase price of the product. (Friedman Decl. ¶ 38.)

Although Plaintiffs and Class Members might be entitled to greater compensation if Plaintiffs' allegations were proven true, this does not mean that the settlement is inadequate. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). "[The] very essence of a settlement is a compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Ser. Comm'n of the City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). Under the circumstances, the Court

concludes that monetary compensation and the stipulated injunctive relief offered in the Settlement Agreement is sufficient for approval.

### 3. Extent of Discovery Completed and Stage of Proceedings

"[S]ettlement approval that takes place prior to formal class certification requires a higher standard of fairness." *Hanlon*, 150 F.3d at 1026. Class Counsel represents that, before filing the original complaint, his office conducted laboratory testing of Defendant's products "including the actual products that were purchased by the named Plaintiffs." (Friedman Decl. ¶ 7.) Thereafter, the parties engaged in extensive informal discovery. (*Id.* ¶ 8.) Class Counsel outlines the extent of this discovery, which included "data regarding the total volume of products sold," "copies of all [Defendant's] standard packaging," "sales data, including product mix, information about price points of products, which products were sold, and the states in which they were sold." (*Id.*). Class Counsel maintains that "[m]y office went into mediation with a full working knowledge of what transpired, where it transpired, how it transpired and how frequently it transpired." (*Id.*)

Additionally, after the informal exchange of discovery, the parties attended a mediation with the Hon. Andrew J. Guilford, ret., of Judicate West on June 5, 2020, as well as two follow-up discussions with the mediator, before reaching a settlement. (*Id.*) The Court therefore concludes that this factor favors approval.

### 4. Experience and Views of Counsel

As laid out in his Declaration, Class Counsel is experienced in class action lawsuits, having lead or participated in numerous class action lawsuits in state and federal courts. (Friedman Decl. ¶¶ 48–53.) Class counsel concludes that, "[t]aking into account the burdens, uncertainty and risks inherent in this litigation, [he has] concluded that further prosecution of this action could be protracted, unduly burdensome, and expensive, and that it is desirable, fair, and beneficial to the class that the action now be fully and finally compromised, settled and terminated in the manner and upon the terms and conditions set forth in the Settlement Agreement." (Friedman Decl. ¶ 41) Additionally, Class Counsel has concluded that "the terms and conditions of this Settlement Agreement are fair,

reasonable and adequate to the proposed class, and that it is in the best interests of the proposed class to settle the Action." (*Id.* ¶ 42.)

Generally, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *c.f. Stull v. Baker*, 410 F. Supp. 1326, 1332 (S.D.N.Y. 1976) (holding that the court should consider the recommendation of counsel, and weight it according to counsel's caliber and experience). Here, due especially to the experience and knowledge of Class Counsel, his recommendations are presumed to be reasonable, and this factor accordingly favors approval.

### C. Fairness Hearing and Required Notice to Parties

#### 1. Notice Requirements

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule directs:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975).

Plaintiffs attach the Declaration of Brandon Schwartz, Director of Notice for Postlethwaite and Netterville ("P&N"). (Decl. of Brandon Schwartz ("Schwartz Decl."), ECF No. 21-2.) They propose the Court appoint P&N as Class Administrator to, among other things, provide notice to the Class. P&N proposes a multifaceted approach to notice to include: "(1) programmatic online display, (2) social media, (3) streaming radio, (4) national press release, (5) toll-free settlement hotline and (6 Settlement Website."

(Schwartz Decl. ¶ 11.) Specifically, the notice will run for four weeks on select websites where Class Members may visit regularly and will utilize social advertising on Facebook and Instagram. (*Id.* ¶¶ 14–19.) The notice will appear both in English and in Spanish. (*Id.* ¶ 19.) Additionally, the notice will appear as a non-skippable ad on Spotify. (*Id.* ¶¶ 20–21.) A press release will be distributed broadly to media outlets including magazines, newspapers, wire services, television, radio and online media outlets, and the notice will appear for four consecutive weeks in *USA Today*. (*Id.* ¶¶ 22–23.) The notices will link to a Settlement Website, and a hotline to answer questions will be available 24 hours a day. (*Id.* ¶¶ 24–26.)

The Court has reviewed the proposed Notice as well as the notice procedures and finds that, given that the specific members of the Class are unknown, the proposed notice satisfies the requirements of Rule 23(c)(2)(b).

### 2. Fairness Hearing

Fed. R. Civ. P. 23(e)(2) requires that "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "The purpose of a fairness hearing is to provide the court with sufficient evidence for it to make an informed decision relating to the fairness of the proposed settlement." *UAW v. General Motors Corp.*, 235 F.R.D. 383, 386 (E.D. Mich. 2006). A fairness hearing need not have all the procedures and protections of a full trial; it is a forum for intervenors to voice their objections and for the fairness of the settlement to be determined, and a court is within its discretion to limit the hearing as necessary to meet those objectives. *UAW*, 235 F.R.D. at 386; *Tenn. Ass'n of Health Maint. Org., Inc. v. Grier*, 262 F.3d 559, 567 (6th Cir. 2001).

Here, in their Settlement Agreement the Parties agree to a framework for Class Members who either wish to opt-out or to object to the proposed Settlement. (Settlement §§ 5.3, 5.4.) Although the Settlement Agreement calls for the Court to limit the time for and method of objections, it is reasonable and in keeping with the purpose of a fairness hearing to do so, and reasonably preserves objectors' rights to be heard.

## III. CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS** the Parties' Joint Motion for Preliminary Approval of the Class Action Settlement and hereby **ORDERS** the following:

(1) Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby conditionally certifies a class for settlement purposes only.

(2) The class shall consist of:

> all persons within the United States who purchased the following 2 Towns products as consumers within four years prior to the filing of the original Complaint until the Class Notice Date: Bright Cider, Easy Squeezy, Pacific Pineapple, Made Marion, Ginja Ninja, or Outcider, Bad Apple, Cherried Away, Cot in the Act, Sun's Out Saison, Nice & Naughty, Rhubarbarian, Pearadise, Prickly Pearadise, Serious Scrump, and Imperial Hop & Stalk. Excluded from the class are 2 Towns and its employees and agents.

(3) The Court appoints the law offices of Todd M. Friedman, P.C. as Class Counsel to represent the Class.

(4) The Court appoints Richard Winters and Jake Gruber as Class Representatives.

(5) The Court approves Postlethwaite and Netterville, APAC, as Class Administrators.

(6) The Court preliminarily approves the Settlement Agreement and the terms and conditions of Settlement set forth therein, subject to further consideration at a Final Approval Hearing.

(7) Class Notice must be completed within 110 days of the date of this Order.

(8) The Court will hold a Final Approval Hearing on **May 10, 2021, at 2:00 p.m.**, in the Courtroom of the Honorable Cynthia Bashant, United States District Court for the Southern District of California, Courtroom 4B (4th Floor – Schwartz), 221 West Broadway, San Diego, CA 92101, for the following purposes:

    a.    Finally determining whether the Class meets all applicable requirements of Rule 23 of the Federal Rules of Civil Procedure and whether the Class should be certified for the purposes of effectuating the Settlement;

    b.    Finally determining whether the proposed Settlement of the case on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate and should be approved and ordered by the Court; and

    c.    Ruling upon such other matters as the Court may deem just and appropriate.

(9) Before the Fairness Hearing, Defendants shall file with the Clerk of the Court proof of their compliance with the notice provisions of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715.

(10) In compliance with Fed. R. Civ. P. 23(b)(3), the Class Members will be permitted to exclude themselves from the class.

(11) Briefs for the Final Approval Hearing must be filed with the Clerk of the Court no later than 28 days prior to the final approval hearing.

(12) The Court may adjourn the Final Approval Hearing and later reconvene such hearing without further notice to the Class Members.

(13) Class Members who desire to object to the fairness of the settlement must file written objections with the Clerk of this Court 45 days before the final approval hearing.

(14) Class Members must provide a copy of the written objection to the Class Counsel and to counsel for Defendant at the following addresses:

    Class Counsel:
        Todd M. Friedman
        21550 Oxnard St., Ste. 780
        Woodland Hills, CA 91367

      Counsel for Defendant:

          Richard Patch  
          Coblentz Patch Duffy & Bass, LLP  
          One Montgomery St, Ste. 3000  
          San Francisco, CA 94104

(15) All objections must include the objector's full name, address, and telephone number, along with a statement of the reasons for his or her objection, whether or not he or she intends to appear at the fairness hearing, and, if the objector intends to appear, whether he or she will appear on his or her own behalf or through counsel.

(16) All objections must be filed with the Clerk and served on the parties' counsel no later than the Objection Deadline. Objections that do not contain all required information or that are received after the Objection Deadline will not be considered at the Final Approval Hearing.

(17) Any Class Member who does not file a valid and timely objection to the settlement shall be barred from seeking review of the settlement by appeal or otherwise.

(18) Any response by the Named Plaintiffs to the objections of Class Members must be filed with the Clerk of the Court no later than 14 days after the objection deadline.

(19) Class Counsel shall file with the Clerk of this Court his application for attorney's fees, costs, and expenses no later than 12 weeks (84 days) before the final approval hearing, sufficiently in advance of the expiration of the objection period that any Class Member will have sufficient information to decide whether to object and, if applicable, to make an informed objection.

(20) The Parties are ordered to carry out the Settlement Agreement in the manner provided in the Settlement Agreement.

**IT IS SO ORDERED.**

**DATED: September 21, 2020**

Hon. Cynthia Bashant  
United States District Judge