Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
*Attorneys for Plaintiffs*

## UNITED STATE DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

RICHARD WINTERS and JAKE GRUBER, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

TWO TOWNS CIDERHOUSE, INC.

Defendant.

Case No. 3:20-cv-00468-BAS-BGS

**CLASS ACTION**

**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

Assigned to the Honorable Cynthia A. Bashant

**DATE:**          MAY 10, 2021
**TIME:**          2:00 P.M.
**COURTROOM:** 4B

[Filed and Served Concurrently with Declaration of Todd M. Friedman; Declaration of Richard Winters; Declaration of Jake Gruber; Declaration of Bradley Madden; [Proposed] Order]

1
2
3

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

4
5
6
7
8
9

    **PLEASE TAKE NOTICE** that Monday, May 10, 2021 at 2:00 p.m., before the United States District Court, Southern District of California, Courtroom 4B, 221 W. Broadway, San Diego, California 92101 (4th Floor) Plaintiffs Richard Winters and Jake Gruber ("Plaintiffs") will move this Court for an order granting final approval of the class action settlement and certification of the settlement class as detailed in Plaintiff's Memorandum of Points and Authorities.

10
11
12
13

    This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the declarations and exhibits thereto, the Second Amended Complaint, all other pleadings and papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

14
15
16

Date: April 12, 2021

        **The Law Offices of Todd M. Friedman, PC**

17
18
19

        By: _/s/ Todd M. Friedman_
           Todd M. Friedman
           *Attorneys for Plaintiffs*

20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................1

II. PROCEDURAL HISTORY ........................................................2

III. SETTLEMENT ........................................................................3

   A. The Fairness Hearing .........................................................3

   B. Attorneys' Fees, Costs Application, And Service Awards ..............4

   C. Class Action Settlement Terms .........................................4

      1. The Class .....................................................................4

      2. Class Recovery ..........................................................4

V. ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL............5

   A. CAFA Notice .....................................................................5

   B. Class Notice .....................................................................5

   C. Digital Notice ...................................................................6

   D. Radio Notice .....................................................................6

   E. Press Release .....................................................................6

   F. Consumer Legal Remedies Act ..........................................6

   G. Detailed Notice Posted on the Settlement Website ..............6

   H. Settlement Post Office Box ...............................................7

   I. Toll-Free Information Line .................................................7

   J. Claims Procedure, Including Expenses, And Claims Received .......7

      1. No Objections and Only 8 Requests For Exclusion ...................8

      2. Settlement Checks ....................................................8

IV. THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR,
REASONABLE, AND ADEQUATE, AND SHOULD BE FINALLY

APPROVED ............................................................................................9

    A. **The Settlement Should Be Finally Approved by the Court**............9

      1. **The Strength of The Lawsuit and The Risk, Expense, Complexity, and Likely Duration of Further Litigation**.....11

      2. **The Amount Offered In Settlement**..............................................12

      3. **The Extent of Discovery Completed** ............................................14

      4. **The Experience and Views of Class Counsel** .............................14

      5. **The Reaction of Class Members To The Settlement**.................15

      6. **The Rule 23(e)(2) considerations favor approval.**.....................16

    B. **The Notice Program Complied with Rule 23 and Due Process**.....17

**VII. CONCLUSION** ...........................................................................18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Table of Authorities

**Cases**

*Arthur v. Sallie Mae, Inc.*, 10-cv-0198-JLR (W.D. Wash.).....................................13

*Boyd v. Bechtel Corp.,* 485 F. Supp. 610 (N.D. Cal. 1979).....................................14

*Chavez v. PHC Corp.*, No. 13-cv-01797-LHK, 2015 WL 581382 (N.D. Cal. Feb. 11, 2015)................................................................................................................17

*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) .............15

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981) ..............................................................................................10

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) ...................................................9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................9, 10

*Hilsley et al v. Ocean Spray Cranberries, Inc., Case No. 3:17-cv-2335-GPC-MDD (S.D. Cal.).*..............................................................................................13

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ........16

*In re Diamond Foods, Inc.*, 2014 U.S. Dist. LEXIS 3252 (N.D. Cal. Jan. 10, 2014)........................................................................................................................8

*In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 15174, *6 (S.D. Cal. Jan. 23, 2012) .10

*In re Global Crossing Sec. ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ....13

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ...................13

*In re Mercury Interactive Corp.*, 618 F.3d 988(9th Cir. 2010) ..............................17

*In re Warner Communications Sec. Litig.,* 618 F. Supp. 735 (S.D. N.Y. 1985).9, 14

*In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008)14

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935 (9th Cir. Cal. 2011)...........................................................................................10

*Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429 (Cal. 2000) ...........................................14

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819 (D. Mass. 1987)................................................................................................................10, 15

*Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950)............17

*Nat'l Rural Telcoms. Coop. v. Directv, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)10, 13

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ...........................................................9, 12

*Pappas v. Naked Juice Co. of Glendora, Inc. Case No. 2:11-cv-8276-JAK-PLA*
    *(C.D. Cal.).* ......................................................................................13

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). .....................17

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ..............10

*Staton v. Boeing Co*., 327 F.3d 938, 959 (9th Cir. 2003). .........................9

*Steinfeld v. Discover Fin. Servs*., 2014 U.S. Dist. LEXIS 44855, *21 (N.D. Cal.
    Mar. 31, 2014) ...................................................................................15

*Stemple*, 2016 U.S. Dist. LEXIS 157207...............................................15

*Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993); ..........10

*Wilson v. Airborne, Inc*., 2008 U.S. Dist. LEXIS 110411 (C.D. Cal. Aug. 13,
    2008) ...............................................................................................18

*Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ........14

**Statutes**

Fed. R. Civ. P. 23 (e). ..........................................................9, 10, 17

Consumer Legal Remedies Act Cal. Civ. Code§§ 1750 *et seq*., ..............2

Illinois Consumer Fraud Act 815 ILCS 505/1 *et seq*., ...........................2

Unfair Competition Law Cal. Business & Professions Code  §§ 17200 et seq., ......2

Unfair Competition Law Cal. Business & Professions Code  §§ 17500 *et seq*., ......2

**Other Authorities**

2 *Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002); ...............15

David R. Hodas, *Enforcement of Environmental Law in A Triangular Federal*
    *System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by*

*the United States, the States, and Their Citizens?*, 54 Md. L. Rev. 1552 (1995) ..2

Federal Judicial Center's Judges' Class Action Notice and Claims Process

    Checklist and Plain Language Guide (2010)........................................................18

*Manual for Complex Lit.,* Fourth § 30.42 ...................................................15

*Manual for Complex Lit.,* Fourth § 30.42.................................................15

**1**

## MEMORANDUM OF POINTS & AUTHORITIES

**2**
**3**
**4**
**5**

Plaintiffs Richard Winters and Jake Gruber ("Plaintiffs") request final approval of this proposed class action settlement agreement (the "Settlement Agreement," Dkt. 21-1 Ex A) with Defendant Two Towns Ciderhouse Inc. (the "Defendant" or "Two Towns").

**6**

I.    INTRODUCTION

**7**
**8**
**9**
**10**
**11**
**12**
**13**
**14**
**15**
**16**
**17**
**18**
**19**
**20**
**21**

This Settlement provides for significant relief for Class Members allegedly harmed by Defendant's false labeling practices.  The Settlement Agreement, reached after extensive, informal discovery exchange and an all-day mediation session before Hon. Andrew J. Guilford (Ret.), provides for a significant financial benefit of a $985,000 common fund, plus injunctive relief, to approximately 1 to 2 million Class Members who purchased products from Defendant that were labeled as containing "Nothing Artificial: NO concentrates or refined sugars; NO essences or artificial flavors; NO velcorin or sorbate" when they contained artificial DL-malic acid.  Those Class Members who submitted a valid claim will receive a pro rata share of the distributable settlement funds.[1]  The settlement also provides substantial injunctive relief in this matter pursuant to Rule 23(b)(2), requiring that Two Towns shall cease using DL-malic acid and shall instead use L-malic acid and shall cause the statement "Nothing Artificial" to be removed from product packaging and its website.  This meaningful policy change serves as additional injunctive relief that benefits both the Class Members and consumers more generally.

**22**
**23**
**24**
**25**
**26**

The Notice Plan approved by the Court has been implemented successfully by the parties and the Court-approved Settlement Administrator, Postlethwaite & Netterville, APAC ("P&N" or "Settlement Administrator"). The reaction of the Class has been very positive. There are no objections to the settlement. There are only 8 valid opt outs.  As of April 7, 2021, P&N has received 92,390 total claims

**27**

**28**

---

[1] Defined terms are used as defined in the Settlement Agreement.

and 35,593 valid claims remaining after adjustments for duplicate and invalid claims. Declaration of Bradley D. Madden ("Madden Decl.") at ¶¶ 16-17.

The deadline to submit claims is January 9, 2021. *Id* at ¶ 15. Based on the participation rate, participating Class Members can be expected to each receive approximately $13.14 based on the claims made. In addition to providing Settlement Class Members with monetary relief, the Settlement incentivizes Defendant and other businesses to comply with the Unfair Competition Law Cal. Business & Professions Code §§ 17500 *et seq*., the Unfair Competition Law Cal. Business & Professions Code §§ 17200 et seq., the Consumer Legal Remedies Act Cal. Civ. Code§§ 1750 *et seq.*, and the Illinois Consumer Fraud Act 815 ILCS 505/1 *et seq*., which benefits the Settlement Class Members, consumers in general, and compliant competitive businesses. *See* David R. Hodas, *Enforcement of Environmental Law in A Triangular Federal System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by the United States, the States, and Their Citizens?*, 54 Md. L. Rev. 1552, 1657 (1995) ("[A]llowing a violator to benefit from noncompliance punishes those who have complied by placing them at a competitive disadvantage. This creates a disincentive for compliance."). The Settlement is abundantly fair and reasonable and should be finally approved.

## II.    PROCEDURAL HISTORY

Plaintiff moved for preliminary approval of the Settlement on July 28, 2020 (Dkt. No. 21). The Court granted preliminary approval on September 22, 2020 and issued a schedule of outstanding dates and deadlines (Dkt. No. 22). Plaintiffs filed their motion for attorneys' fees and costs and for service awards on February 15, 2021 (Dkt. No. 23). Plaintiff now submits this motion for final approval.

///

///

///

///

## III.  SETTLEMENT

In an earnest attempt to settle the action and avoid the risks inherent in proceeding to trial, the parties engaged in a mediation with former Central District Court Judge Andrew J. Guilford (ret.).  The Settlement Agreement resulted from extensive arm's length negotiations and a private mediation on June 5, 2020 and several subsequent mediation sessions, ultimately resulting in two mediator's proposals regarding several aspects of the Settlement which were accepted by the Parties. The parties also conducted all necessary discovery, including discovery pertaining to the issues of malic acid content in Defendant's products, class scope, damages, financial viability, and class certification issues.

Despite strong views about both merits and certification issues from both sides, the parties engaged in settlement negotiations, and during the mediation sessions, were able to reach an understanding with the assistance of Judge Guilford, the terms of which are memorialized in the Agreement.  As explained below, all of the factors that courts consider weigh in favor final approval of the proposed Settlement.  The relief provided by the settlement is significant, particularly given the risk and expense of continued litigation. The settlement ensures that class members are compensated without delay and eliminates the risk of loss at trial or on appeal.  The parties are fully apprised of the strengths and weaknesses of the claims and defenses.  Class Counsel have successfully litigated many false labeling cases and fully support the settlement.  And that no class members objected further supports final approval of the settlement.  Plaintiff requests that the Court finally approve the settlement as fair, reasonable and adequate.

### A.    The Fairness Hearing

At the Fairness Hearing scheduled for May 10, 2021, the Court will decide whether to finally approve the Settlement and whether to grant Class Counsel's request for attorneys' fees, actual litigation costs, and service awards to the Class Representative.

**B.**     **Attorneys' Fees, Costs Application, And Service Awards**

Class Counsel seek $246,250.00 in attorneys' fees (twenty five percent of the Common Fund); litigation costs currently totaling $7,907.96; and a service award in the amount of $7,500 and $5,000 to the Class Representatives to be distributed separately from the Class Recovery.

**C.**     **Class Action Settlement Terms**

The significant terms of the Settlement are as follows:

**1.**     **The Class**

The "Class" has been certified by this Court (Dkt. No. 22) and is defined the same in the Agreement as follows:

> *"All persons within the United States who purchased the following 2 Towns products as consumers within four years prior to the filing of the original complaint until the Class Notice Date: Bright Cider, Easy Squeezy, Pacific Pineapple, Made Marion, Ginja Ninja, Outcider, Bad Apple, Cherried Away, Cot in the Act, Sun's Out Saison, Nice & Naughty, Rhubarbarian, Pearadise, Prickly Pearadise, Serious Scrump, and Imperial Hop & Stalk"*

The Class Period is from March 12, 2016 through October 11, 2020. The Class consisted of between 1 and 2 million Class Members.

**2.**     **Class Recovery**

The Settlement provides for a significant financial benefit of a $985,000 Common Fund, which will be distributed on a pro rata basis (after the deduction of Class Counsels' fees and costs, administration expenses, and the incentive awards) to the those members of the approximately 1 to 2 million  Class Members who purchased products from Defendant that were labeled as containing "Nothing Artificial: NO concentrates or refined sugars; NO essences or artificial flavors; NO

velcorin or sorbate" when they contained artificial DL-malic acid who submitted a valid and timely claim. The total *estimated* distributable fund going to Class Members is $468,342.04. Friedman Decl. ¶ 23. As of April 7, 2021, P&N has received 35,593 valid claims. Madden Decl. at ¶ 17. Based on these numbers, it is presently estimated that each Class Member that submitted a valid claim will receive approximately $13.14 P&N will send the settlement checks via U.S. mail and/or direct deposit after receiving approval from counsel to the Parties that judgment has become final.

Class Members shall be advised that the checks must be negotiated within one hundred and eighty (180) days. Settlement Agreement at § 5.5. After the 180-day period for approved Class Members to cash their check has run, the Settlement Administration shall stop payment on all outstanding checks, and any residual amounts left uncashed shall be distributed to cy pres recipient Public Justice. The Class Recovery shall not revert to Defendant.

In addition, Defendant is agreeing to cease using DL-malic acid and instead use L-malic acid and to cause the statement "Nothing Artificial" to be removed from product packaging and its website. From a consumer protection standpoint, Defendant's agreement to change its practices will eliminate any false labeling concerns, and therefore protects consumer interests.

## V. ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL

### A. CAFA Notice

Defendant mailed CAFA notice on October 1, 2020, in compliance with 28 U.S.C. § 1715(b).

### B. Class Notice

On September 21, 2020, the Court approved the Notice Plan and appointed P&N as the Claims Administrator. (Dkt. No. 22). The class notice consisted of digital notice, radio notice, a press release, notice pursuant to the CLRA, an established settlement website. Madden Decl. ¶¶ 4-9.

### C.    Digital Notice

Beginning on October 11, 2020 and continuing through November 10, 2020, P&N caused digital notices to run across social media (Facebook and Instagram) and targeted websites resulted in 30,633,610 impressions which was 18,733,610 more impressions than the Notice Plan was designed to deliver. *Id.* at ¶ 4.

### D.    Radio Notice

Beginning on October 20, 2020 and continuing through October 31, 2020, P&N caused streaming Radio Notice to run via Spotify (mobile, desktop, etc.). Radio Notice consisted of a 30-second, non-skippable format, which resulted in 394,054 impressions. *Id.* at ¶ 5.

### E.    Press Release

On October 12, 2020, P&N distributed a press release across PR Newswire's US1 and National Hispanic Newsline. *Id.* at ¶ 6.

### F.    California Consumer Legal Remedies Act

To satisfy CLRA requirements, P&N caused the Summary Notice to be published once a week for four weeks in *USA Today* – Los Angeles region. The Summary Notice appeared in the October 12, 2020, October 20, 2020, October 26, 2020, and November 2, 2020 editions. *Id.* at ¶7

### G.    Detailed Notice Posted on The Settlement Website

On October 11, 2020, P&N established the Settlement Website www.cidersettlement.com. Visitors to the Settlement Website can download the Long Form Notice, the Claim and exclusion forms, as well as Court Documents, such as the Class Action Complaint, the Settlement Agreement, Motions filed by Class Counsel, and Orders of the Court. *Id.* at 8. Visitors were also able to submit claims and exclusion requests electronically, submit documentation and address updates electronically, and to find answers to frequently asked questions (FAQs), important dates and deadlines, and contact information for the Claims Administrator Among other things, the website contains the Settlement Agreement, Preliminary

Approval Order, Motion for Attorneys' Fees Costs and Service Awards, detailed Class Notice, Mail Notice, Claim Form and online Opt-Out Form. *Id.* at 8. As of April 7, 2021, the Settlement Website has received 155,636 unique visitors and 178,847 page views. *Id* at 9.

### H.    Settlement Post Office Box

P&N also established a dedicated Post Office Box ("P.O. Box"):

2 Towns Ciderhouse Settlement
c/o Postlethwaite & Netterville
PO Box 1228
Baton Rouge, LA 70821

*Id.* at 11.

The P.O. Box appears in the Long Form Notice and in multiple locations on the Settlement Website. P&N monitors the P.O. Box daily and uses a dedicated mail intake team to process each item received. *Id.* at 12.

### I.    Toll-Free Information Line

P&N also established a case-specific toll-free number for Class Members to call to obtain information regarding the Settlement, and leave inquiry messages. *Id.* at ¶ 13. As of April 7, 2021, the toll-free number has received 51 calls. *Id.* at ¶ 14. P&N will continue to maintain the toll-free number throughout the Settlement administration process. *Id.* P&N also established an email address as another option for Class Members to contact to address specific questions. *Id.* at ¶ 10.

### J.    Claims Procedure, Including Expenses, And Claims Received

The procedure for submitting a claim was made as easy as possible – a claim form could be submitted online via the Settlement Website or sent by U.S. Mail. *See* Madden Decl. at ¶¶ 8, 12. All that was required was the Class Member select the number of each Class Product they purchased up to 10 products, or to provide proof of purchase to select for more than 10 products, as well as mailing address or direct deposit information for purposes of sending payment. P&N has received 35,593 valid claim forms from Class Members. *Id*. at ¶ 17.

### 1.  No Objections and Only 8 Requests For Exclusion

Class Members were permitted to opt-out[2] or to submit an objection.  *See* Madden Decl., ¶¶ 19-20, Ex 6.  The deadline to submit a request for exclusion or object is December 28, 2020.  As of December 28, 2020, 2020, P&N has received only 8 requests for exclusion, and there are no objections to the Settlement.  *Id*.  The fact that there are no objections and only 8  exclusion requests out of approximately 1 to 2 million Class Members highly supports the adequacy of the proposed Settlement[3].  *In re Diamond Foods, Inc.*, 2014 U.S. Dist. LEXIS 3252, *9 (N.D. Cal. Jan. 10, 2014) ("Also supporting approval is the reaction of class members to the proposed class settlement. After 67,727 notices were sent to potential class members, there have been only 29 requests to opt out of the class and no objection to the settlement or the requested attorney's fees and expenses.")

### 2.  Settlement Checks

Each Class Member that submitted a valid claim will receive an estimated approximately $13.14, with the total amount paid on valid claims being estimated at approximately $468,342.04.  The Class Recovery is separate from any amount to be paid for attorneys' fees and costs, incentive award, and settlement administration. P&N will send the settlement checks via U.S. mail or direct electronic deposit if the Class member elected to receive such payment, after receiving approval from counsel to the Parties and funding to be received.

///

///

///

///

---

[2] Under Fed. R. Civ. P. 23(e)(4), the Court may afford an additional opportunity for Class Members to request exclusion from the Settlement.

[3] Comparing Class Members who submitted Claims to those who requested exclusion, there are 0002% requests for exclusions as compared to the number of claims, demonstrating the lack of resistance to the settlement by Class Members.

## VI.    THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE FINALLY APPROVED

### A.    The Settlement Should Be Finally Approved by the Court

"Unlike the settlement of most private civil actions, class actions may be settled only with the approval of the district court." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco,* 688 F.2d 615, 623 (9th Cir. 1982). "The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e)(1)(C).  The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

"To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: 'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'"  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Justice*, 688 F.2d at 625.  The Court must balance against the continuing risks of litigation and the immediacy and certainty of a substantial recovery.  *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Warner Communications Sec. Litig.,* 618 F. Supp. 735, 741 (S.D. N.Y. 1985).

The Ninth Circuit has long supported settlements reached by capable opponents in arms' length negotiations. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressed the opinion that courts should defer to the "private consensual decision of the [settling] parties." *Id.* at 965 (citing *Hanlon*, 150 F.3d at 1027 (9th Cir. 1998)). The district court must exercise "sound discretion" in approving a settlement. *See Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981). However, "where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc*., 671 F. Supp. 819, 822 (D. Mass. 1987); *In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 15174, *6 (S.D. Cal. Jan. 23, 2012) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.") (citing *Nat'l Rural Telcoms. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

In addition, under the recent amendments to Rule 23, courts consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

All of these factors support a finding that the settlement is fair, reasonable, and adequate. Moreover, the Settlement was reached with the assistance Hon. Andrew J. Guilford (Ret.). *See Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 948 (9th Cir. Cal. 2011). Finally, Class Counsel

and the Plaintiffs agree that this Settlement is fair and reasonable; among other things, the Settlement will avoid costly and time-consuming additional litigation and the need for trial. Friedman Decl. at ¶¶ 32-33.

### 1. The Strength of The Lawsuit and The Risk, Expense, Complexity, and Likely Duration of Further Litigation

Plaintiffs believe the have a strong case against Defendant but recognize the significant risks in litigating it to trial.  Defendant has vigorously contested the claims asserted by Plaintiffs in this Litigation, which is described in detail in the contemporaneous declaration of Mr. Friedman.  Friedman Decl. ¶¶ 10 & 34.  First, Defendant denies that artificial DL-Malic Acid is uniformly added to its products and is instead only added to certain batches of cider that require acidity balancing.  This could cause a serious hinderance to class certification because the true members of the class would be indistinguishable from consumers that purchased Defendant's products without artificial DL-Malic Acid, absent individualized testing.  While Plaintiffs disagree and believe methods could be used to identify Class Members manageably and believe that Ninth Circuit authority holds such a challenge to be irrelevant to the Rule 23 analysis, some courts have agreed with the arguments anticipated from Defendant.

Second, Defendant contended that artificial DL-Malic Acid did not act as a flavor in its products and therefore Defendant's labeling is not deceptive (a merits argument).  Again, while Plaintiffs strongly disagree with this position, such would have undermined the entire case, if the Court was persuaded by Defendant's position.  There are also questions as to damages that are not insignificant – i.e. determining how much consumers were actually harmed by the mislabeling, when most consumers likely placed small value on the added statements on the labels.  It is likely that a conjoin survey would have resulted in a small percentage of the purchase price being attributed to this one advertised characteristic, and unlikely that

consumers would be legally entitled to a full refund, or even anything approaching half of their purchase price being returned to them as a result of the alleged mislabeling at issue. While both sides strongly believed in the merits of their respective cases, there are clearly numerous palpable risks to both sides in continuing the Litigation. If the Litigation were to continue, challenges would likely be made to any class certification motion made by Plaintiff, thereby placing in doubt whether certification of a class could be obtained and/or maintained in the Litigation. Also, additional substantive challenges to the claims might be raised, including a challenge on summary judgment. The law is fluid in many of these areas, which means that inevitably there would be appeals that would drag out for years. In considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation, against the benefits to the Class. As a result, Class Counsel supports the Settlement and seek its Final Approval. *See Friedman Decl*, ¶¶ 33-37.

Considering the potential risks and expenses associated with continued prosecution of the lawsuit, the probability of appeals by both sides, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation, the proposed settlement is fair, reasonable, and adequate. *See Officers for Justice*, 688 F.2d at 624 ("Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation . . .")

### 2.    <u>The Amount Offered In Settlement</u>

As set forth above, Two Towns has agreed to pay $985,000 to fund the settlement, which includes notice and claims administration costs, creating and maintaining a Settlement Website and toll free number, providing CAFA notice, an Incentive Award to Plaintiffs in the amount of $7,500 and $5,000 and attorneys' fees in the amount of $246,250 and reimbursement of litigation costs of $7,907.96. *See Friedman Decl*, ¶26. $468,342.04 of this Common Fund is estimated to be

1  distributed to Class Members.  P&N has received 35,593 valid claims, thus the
2  Class Members are expected to receive approximately $13.14 each on average,
3  based on the current number of claims.  Friedman Decl. ¶ 23.

4      This payment is a significant recovery for Class Members. The settlement
5  amount to class members is comparable to numerous similar false advertisement
6  class action settlements which have been approved by courts within the Ninth Circuit
7  and California in particular.  *See Pappas v. Naked Juice Co. of Glendora, Inc. Case*
8  *No. 2:11-cv-8276-JAK-PLA (C.D. Cal.).* (class members were to receive either up
9  to $45 without proof of purchase or up to $75 with proof of purchase per claimant);
10 *Hilsley et al v. Ocean Spray Cranberries, Inc., Case No. 3:17-cv-2335-GPC-MDD*
11 *(S.D. Cal.).*  (Class members were to receive $1 per bottle for up to 20 bottles of
12 product).  It is well-settled that a proposed settlement may be accepted where the
13 recovery represents a fraction of the maximum potential recovery. *See e.g., Nat'l*
14 *Rural Tele. Coop v. DIRECTV, Inc.*, 221 F.R.D 523, 527 (C.D. Cal. 2004) ("well
15 settled law that a proposed settlement may be acceptable even though it amounts to
16 only a fraction of the potential recovery"); *In re Global Crossing Sec. ERISA Litig.*,
17 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes
18 a relatively small percentage of the most optimistic estimate does not, in itself, weigh
19 against the settlement; rather, the percentage should be considered in light of
20 strength of the claims"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th
21 Cir. 2000) (approving a settlement that comprised one-sixth of plaintiffs' potential
22 recovery).

23     As the *Linder* Court explained, "… it is firmly established that the benefits of
24 certification are not measured by reference to individual recoveries alone. Not only
25 do class actions offer consumers a means of recovery for modest individual
26 damages, but such actions often produce several salutary by-products, including a
27 therapeutic effect upon those [entities] who indulge in [illegal] practices, aid to
28 legitimate business enterprises by curtailing illegitimate [conduct], and avoidance to

the judicial process of the burden of multiple litigation involving identical claims." *Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429, 445 (Cal. 2000) (internal quotations omitted).  Further, Plaintiff negotiated an injunctive component of the Settlement which results in Defendant no longer using DL-malic acid a further benefit to Class Members and consumers generally.

### 3. The Extent of Discovery Completed

The parties agreed to attempt to resolve this dispute though early mediation and engaged in extensive informal discovery of the relevant issues involved in this litigation, including relating to the malic acid content of Defendant's products, and the size and scope of the Class.  Class Counsel performed significant factual investigation prior to bringing the action including lab testing on numerous occasions with multiple batches of product. The  Class Counsel are satisfied that the information provided about the distribution and sales of Class Products is accurate.  The time and effort spent examining and investigating the claims militate in favor of preliminary approval of the proposed Settlement, as the process strongly indicates that there was no collusion.  *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.").

As detailed in the motion for preliminary settlement approval (Dkt. No. 21), the parties engaged conducted considerable discovery prior to counsel for the parties attending an all-day private mediation before the Hon. Andrew J. Guilford (Ret.). Thus, the litigation here had reached the stage where "the parties certainly have a clear view of the strengths and weaknesses of their cases." *In re Warner Communications*, 618 F. Supp. at 745.

### 4. The Experience and Views of Class Counsel

"The recommendations of plaintiff's counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979). The presumption of reasonableness in this action is fully warranted because the

1    settlement is the product of arm's length negotiations conducted by capable,
2    experienced counsel.  *See M. Berenson Co.*, 671 F. Supp. at 822; *Ellis*, 87 F.R.D. at
3    18 ("that experienced counsel involved in the case approved the settlement after
4    hard-fought negotiations is entitled to considerable weight"); 2 *Newberg on Class*
5    *Actions* § 11.24 (4th Ed. & Supp. 2002); *Manual for Complex Lit.,* Fourth § 30.42.

6        It is the considered judgment of Class Counsel experienced in class action
7    litigation that this settlement is a fair, reasonable and an adequate settlement
8    benefiting Settlement Class Members nationwide. Class Counsel are experienced
9    consumer class action lawyers.  This Settlement was negotiated without collusion
10   by experienced and capable Class Counsel who recommend its approval. Friedman
11   Decl., ¶¶ 8-9.  Given their experience and expertise, Class Counsel are well-qualified
12   to not only assess the prospects of a case, but also to negotiate a favorable resolution
13   for the class. Class Counsel have achieved such a result here in this class action, and
14   unequivocally assert that the proposed Settlement should receive final approval.

15           **5.    The Reaction of Class Members To The Settlement**

16       To date, there are no objections and only 8 requests for exclusion (Madden
17   Decl., ¶¶ 19-20), which is important in evaluating the fairness, reasonableness and
18   adequacy of the settlement and supports approval of the settlement here. *See*
19   *Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855, *21 (N.D. Cal. Mar.
20   31, 2014) (only specific objections or comments from 9 class members, and 239 out
21   of the approximately 8 million class members chose to opt out); *Couser v. Comenity*
22   *Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) ("Upon considering the high rate
23   of Class Member claims and the relatively low number of requests for exclusion, the
24   Court finds the reaction of the Class to the Settlement favors approval of the
25   Settlement."); *Stemple*, 2016 U.S. Dist. LEXIS 157207 at *7-8 (finding the lack of
26   objections supported approval of the settlement).

27       ///
28       ///

### 6. The Rule 23(e)(2) considerations favor approval.

The considerations outlined in the newly revised Rule 23(e)(2) also support final approval of the settlement. The first consideration is the adequacy of Plaintiff's and his counsel's representation of the Class. The Court already ruled that Plaintiff and his counsel that competently and adequately represented the Class in the Order granting preliminary approval of the Settlement. (Dkt. No. 22). Class Counsel, who have a great deal of experience litigating and settling class action cases, also wholeheartedly support the settlement. This consideration therefore supports approval.

The second consideration also supports approval because the settlement was negotiated at arms' length. None of the "red flags" of potential collusion the Ninth Circuit has identified exist in this case. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (noting that plaintiffs' counsel may have allowed pursuit of their own self-interest to infect settlement negotiations when they receive a disproportionate portion of the settlement, the parties agree to a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, or the parties agree that any fees not awarded will revert to defendants rather than be added to the class fund). In fact, the fees being requested by Class Counsel match the Ninth Circuit benchmark for common fund settlements.

The third consideration — the adequacy of the relief — also supports Settlement. As discussed above, the estimated $13.14 per Class Members claim is more than adequate to warrant approval, particularly in light of the costs, risks and delay of trial and appeal. The distribution plan ensures that Settlement Class Members will be treated equitably relative to each other. The Class Recovery will be distributed to all Class Members who filed valid claims. Further, as outlined above, the injunctive relief obtained by Plaintiff provides substantial benefits to the Class as well.

Finally, Plaintiff addresses the reasonableness of the requested attorneys' fees

in the previous attorneys fee motion. (Dkt. No. 23).

### B. The Notice Program Complied with Rule 23 and Due Process

The notice program approved by the Court and implemented by P&N satisfied the requirements of Rule 23 and due process. Rule 23 provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). When the class is certified under Rule 23(b)(3), the notice must also be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). To comply with constitutional due process standards, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).

The court-approved notice was "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" and described "the action and the plaintiffs' rights in it." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). The notice was written in plain English and included the dates for class members to object and the final approval hearing. *See Chavez v. PHC Corp*., No. 13-cv-01797-LHK, 2015 WL 581382, at *6 (N.D. Cal. Feb. 11, 2015) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" (citation omitted)).

In total, the Notice Plan delivered 31,027,664 impressions across all digital media platforms. Madden Decl., ¶ 22. The measurable element of the Notice Plan, along with elements not able to be measured (e.g. Settlement Website, toll-free hotline, CLRA, Radio Notice, & press release), resulted in a reach and frequency in excess of the originally estimated 75% reach and 3.0 frequency. *Id.* These numbers

satisfy due process. *See* Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, at p. 3 (2010) (recognizing that a reach of between 70-95% is reasonable); *see also, Wilson v. Airborne, Inc*., 2008 U.S. Dist. LEXIS 110411, *13-14 (C.D. Cal. Aug. 13, 2008) (court granted final approval of settlement where measurements used to estimate notice reach suggested that 80% of adults learned of the settlement).

P&N also established a settlement website with detailed information about the settlement. Madden Decl., ¶ 8. Located at www.cidersettle.com, the website had 155,636 unique visitors and 178,847 page views as of April 7, 2021. *Id*. at ¶ 9. The website lists important dates and class members' rights and options, includes frequently asked questions and key documents from the case like the settlement agreement and motion for attorneys' fees, and allowed class members to submit an online claim. The website (and notices) also provided a toll-free number that class members could call to obtain information about the Settlement and leave inquiry messages. *Id.* at ¶¶ 13.

## VII.   CONCLUSION

In sum, the parties have reached this Settlement following extensive arms' length negotiations, with the assistance of an experienced mediator. The Settlement is fair and reasonable to the Class Members who were afforded notice that complies with due process. For the foregoing reasons, Plaintiff respectfully requests the Court:

- Grant final approval of the proposed class action settlement;
- Order payment from the settlement proceeds in compliance with the Court's Preliminary Approval Order and the Agreement;
- Grant the Motion for Attorneys' Fees and Costs and Service Awards;
- Enter the proposed order of Final Approval of Class Action Settlement and Judgment; and,
- Retain continuing jurisdiction over the implementation, interpretation, administration and consummation of the Settlement.

1

2    Date: April 12, 2021                                    **The   Law   Offices   of   Todd   M. Friedman, PC**

3

4                                                            By:  _/s/ Todd M. Friedman_
                                                                 Todd M. Friedman
5                                                                 _Attorneys for Plaintiffs_

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

Filed electronically on this 12st day of April, 2021, with:

United States District Court CM/ECF system

Notification sent electronically on this 12st day of April, 2021, to:

Honorable Judge Cynthia Bashant
United States District Court
Southern District of California

And All Counsel of Record as Recorded On The Electronic Service List


s/Todd M. Friedman
Todd M. Friedman, Esq.

PROOF OF SERVICE